Gregory T. NELSON, Appellant,

v.

UNITED STATES, Appellee.

Raytheal S. GARRETT, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10216, 10519.

District of Columbia Court of Appeals.

Argued Feb. 10, 1977.

Decided Sept. 29, 1977.

John Michael Clear, Washington, D. C., appointed by this court, with whom Jonathan D. Blake, Washington, D. C., appointed by this court, was on the brief, for appellant Nelson.

Constance T. O'Bryant, Public Defender Service, Washington, D. C., for appellant Garrett.

Lillian A. McEwen, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Tobey W. Kaczensky, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, YEAGLEY and HARRIS, Associate Judges.

YEAGLEY, Associate Judge:

Appellants Nelson and Garrett challenge their convictions of second-degree burglary, D.C.Code 1973, § 22–1801(b), on the grounds that (1) they were deprived of their constitutional right to a jury trial because of one juror's temporary absence during a part of the deliberations; (2) the trial court gave an anti-deadlock charge which coerced the jurors into rendering a guilty verdict; (3) the trial court erred in denying a defense motion for a continuance; and (4) the court improperly excluded demonstrative evidence. Finding no error, we affirm.

The government's case rested principally on the testimony of the arresting officer who observed what he believed to be a burglary in progress on North Capitol Street, N.W. Although the officer was driving on the opposite side of the street at the time, he stated that he had a clear view of two Negro males inside the vestibule area of an apartment building. The officer made a U-turn and pulled up near the front entrance. He then noticed that the glass was broken out of the front door and that the door was standing open. He also observed two men with their backs to him with screwdrivers in their hands prying at what appeared to him to be the lock of the door to apartment No. 1. Almost immediately thereafter, a backup squad car arrived on the scene, and appellants Nelson and Garrett were arrested as they came out of the building. It was undisputed at trial that the front door entrance of the building

had been forced open, that glass panels on both the front and apartment doors had been broken, and that the door to one apartment bore marks of an attempt to force open the lock.

During the defense case, appellant Garrett admitted his presence inside the building, but insisted that he and Nelson had been told that a burglary was in progress, and that they had come from Garrett's nearby residence to investigate. At one point, defense counsel requested a continuance to permit an eyewitness to the break-in to recover from a serious back injury before testifying. The court denied the motion following voir dire of the witness with respect to her physical condition and ability to accurately recall what she had observed.

The defense also challenged the credibility of the arresting officer's initial observations by attempting to introduce a diagram showing the location of buildings on North Capitol Street. The court sustained the government's objection to the diagram on the ground that it was not a scale drawing. It subsequently disallowed the use of photographs of the same area because there had been no showing that conditions at the time of the burglary were the same as those shown in the photographs.

In spite of the seemingly straightforward factual issues in the case, the jury deliberated for approximately 26 hours over a four-day period. It first notified the court of its inability to reach a decision on the second day of deliberations. Thereafter, the jurors were given a modified "*Allen* charge"[1] and told to continue their discussions. Approximately two hours later, they informed the court that they still could not reach a unanimous decision and were "hopelessly deadlocked." They were then excused but resumed deliberations the following morning.

During the afternoon of the third day, the court commented to counsel that it understood "there have been some very heated words exchanged in the deliberation room." When asked by counsel to indicate the basis for its knowledge about the deliberations, the court indicated that it had been "advised that as a result of some of the heated exchanges that have occurred in the jury room, one juror has felt it necessary to separate herself from the jury." The court then disclosed the contents of a note which was received from the juror, apparently through the marshal.

> Your Honor, it is the feeling of one of the jurors that a so-called foreigner is not capable of making a decision on this case. I should like therefore to be excused.
> Inez Thomas.

The record does not indicate at exactly what time juror Thomas separated herself from the deliberations, nor where she went. The court advised counsel that the juror "has declined to obey my instruction, through the marshal, to return to the jury room," because she was too upset to do so. The government estimates, however, that she was absent for approximately 1½ hours. Counsel for the defendants made no objection to the juror's absence at the time, did not inquire where she had been, and repeatedly urged the court to attempt to reinstruct the jury so as to preserve its ability to continue deliberations.[2] The court indicated that a mistrial might be justified because "sufficient time has elapsed in this matter as to show . . . that this jury is incapable of arriving at a unanimous verdict." It nevertheless questioned briefly juror Thomas individually and, after concluding that she was too upset to continue that day, recalled the remaining eleven members of the jury into the courtroom and instructed all twelve as follows:

---

1. *See* D.C. Bar Ass'n Criminal Jury Instructions for the District of Columbia, No. 2.91, Alternative A (2d ed. 1972).

2. Defense counsel urged that the juror be returned to the jury room and that the court remind the jury that "it must deliberate without regard to whether a person is a foreigner or not." Counsel also urged that the jurors be given the antideadlock instruction approved by this court in *Winters v. United States,* D.C. App., 317 A.2d 530 (1974) (en banc). Thereafter, the record is clear that counsel repeatedly urged that a "severe charge," *i. e.,* a "stronger charge" than the previous modified *Allen* charge be given in order to break the deadlock.

This is a very serious matter with us, ladies and gentlemen. This is a very serious matter, and I don't know of any reason under the sun why you cannot come to a unanimous verdict in this case, and at this moment I remain convinced that you can . . .. The evidence was heard and seen in this courtroom, and I gave you the law, and there is where your answer is, and I am convinced that you are capable of doing that, and I shall insist upon it.

Counsel for the defendants did not object to this instruction after it was given. The jury resumed its deliberations the following morning and reached its verdict at 4:45 p. m.

First raised on appeal is the question whether juror Thomas' temporary absence from the deliberations deprived appellants of their Sixth Amendment right to a trial by jury. It is a constitutional principle of long standing that every defendant in a federal criminal case has the right to have his guilt found, if at all, only by the unanimous verdict of a jury of his peers. *Andres v. United States,* 333 U.S. 740, 68 S.Ct. 880, 92 L.Ed. 1055 (1948); *United States v. Thomas,* 146 U.S.App.D.C. 101, 449 F.2d 1177 (1971) (en banc); *Billeci v. United States,* 87 U.S.App.D.C. 274, 184 F.2d 394 (1950). The Sixth Amendment guarantees that a defendant will be tried by an impartial and unprejudiced jury. *Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). When efforts to secure a verdict from the jury reach the point at which a single juror may be coerced into surrendering views entertained conscientiously, the requirement of unanimity may be diluted. *United States v. Thomas, supra.*

We recognize also that courts have not tolerated juror misconduct which resulted in substantial prejudice to the defendant. *See, e. g., Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); *Pekar v. United States,* 315 F.2d 319 (5th Cir. 1963); *Wheaton v. United States,* 133 F.2d 522 (8th Cir. 1943). How-ever, not every irregularity in a juror's conduct compels reversal. The dereliction must be such as to deprive the defendant of the continued, objective and disinterested judgment of the juror, thereby foreclosing the accused's right to a fair trial. *See United States v. Schrimsher,* 493 F.2d 848 (5th Cir. 1974); *United States v. Gersh,* 328 F.2d 460 (2d Cir.), *cert. denied sub nom.* 377 U.S. 992, 84 S.Ct. 1919, 12 L.Ed.2d 1045 (1964); *Wheaton v. United States, supra; United States v. Fay,* 238 F.Supp. 1005 (S.D.N.Y.1965).

In the present case, the record indicates that after the parties were informed of juror Thomas' absence, defense counsel strongly urged the court not to question her regarding the circumstances of her absence because it might create a "possibility of interrupting the deliberations." Counsel raised no objection to the misconduct, but requested instead that a stronger anti-deadlock charge be given to the entire panel. We note also that the verdicts of guilty were not returned until late the following afternoon, and that a poll of the individual jurors did not reveal any indication of coercion or intimidation. Under such circumstances, we cannot agree that the juror's misconduct, absent some indication of prejudicial activity during the brief period in which she was not present, deprived the defendants of their right to a trial by twelve impartial and unprejudiced jurors. *Parker v. Gladden, supra.* Further, in light of the defense posture taken at the time, we find no merit to appellants' argument now that it was reversible error for the trial court not to inquire in detail into the circumstances of the juror's absence.

Appellants next argue that their convictions cannot stand in light of the coercive anti-deadlock charge which was given to the jury at the end of the third day of deliberations. They contend that the court's directive went far beyond the language permitted in *Winters v. United States,* D.C.App., 317 A.2d 530 (1974) (en banc), because in effect it compelled the jurors to reach a verdict.

■ Defense counsel did not object to the charge after it was given. Our review of the instruction is therefore limited to a determination whether it resulted in a plain error or defect affecting the substantial rights of the defendants. *Watts v. United States,* D.C.App., 362 A.2d 706, 708–09 (1976) (en banc); *see* D.C.Code 1973, § 11–721(e).

■ We recognize that communications from the trial court can have an influential effect on the jury. If we conclude that the judge's statement had the coercive effect attributed to it, the judgment should be reversed. *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). *See also Jones v. Norvell,* 472 F.2d 1185 (6th Cir.), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2275, 36 L.Ed.2d 964 (1973).

■ In determining whether the instruction in the present case was so coercive as to constitute plain error, we must, of course, consider it "in its context and under all the circumstances." *Jenkins v. United States, supra* 380 U.S. at 446, 85 S.Ct. at 1060.

■ The record indicates that shortly before the instruction was given, the trial court was disposed to declare a mistrial. It was only after repeated requests by defense counsel for a stronger anti-deadlock charge that the court finally made the challenged remarks. Presumably, defense counsel believed that the jury was about to acquit their clients. The instruction was not directed to any particular juror, and it appears that its effect was attenuated because the panel was discharged for the rest of the day and did not reach its verdict until late the following afternoon. Although we are troubled by the language used by the court, we are not persuaded that the instruction, when viewed "in its context and under all the circumstances" rose to the level of plain error.

■ Finally, we have examined carefully the record with respect to appellants' final two contentions and we find no abuse of discretion in the trial court's exclusion of the demonstrative evidence, *Richardson v.*

*Gregory,* 108 U.S.App.D.C. 263, 281 F.2d 626 (1960), or in its denial of a defense motion for a continuance. *Brown v. United States,* D.C.App., 244 A.2d 487 (1968).

Accordingly, the judgments are

*Affirmed.*