Larry T. LEE, Appellant,

v.

UNITED STATES, Appellee.

Alvin C. HINES, Appellant,

v.

UNITED STATES, Appellee.

John P. McILWAIN, Jr., Appellant,

v.

UNITED STATES, Appellee.

Nos. 81–1300, 81–1379 and 81–1390.

District of Columbia Court of Appeals.

Argued Oct. 6, 1982.

Decided Dec. 29, 1982.

Charles S. Carroccio, Jr., Washington, D.C., appointed by this court for appellant Hines.

Barbara R. Miller, Public Defender Service, with whom William J. Mertens, Public Defender Service, Washington, D.C., was on the brief, for appellant McIlwain.

Thomas P. Murphy, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, and F. Joseph Warin, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Edward Gross, appointed by this court, Fairfax, Va., for appellant Lee.

Before NEWMAN, Chief Judge, and KERN and BELSON, Associate Judges.

KERN, Associate Judge:

Appellants challenge their convictions of second degree burglary while armed, D.C. Code 1981, §§ 22–1801, –3202, upon grounds, primarily, 1) that a mistrial should have been ordered when it appeared that one of the jurors was probably under the influence of alcohol during a part of the deliberations, and 2) that the trial judge erred in not making adequate inquiry into that juror's competence and the extent of the alleged insobriety. Finding no error, we affirm the convictions.

## I

On December 18, 1980, the three appellants, armed with a gun, entered the offices of A.D.E., Inc., ("ADE"), a gold and silver jewelry business, and took $6000 cash and a large amount of jewelry from the operator, Allen Danneman, and an ADE employee, Lori Greenstein. Appellant Hines was arrested later that same day with $6000 cash, a collection of jewelry, and an imitation starter pistol in his coat and in a bag he had been carrying. Appellants Lee and McIlwain were arrested later that day, after police officers had surrounded the house they were in and had conducted negotiations by telephone for their surrender.

At trial, the appellants conceded that they had entered the offices of ADE on the date in question and removed the property alleged to have been stolen. However, they asserted in defense that Danneman and Greenstein had consented to the "robbery" of ADE and had, in fact, hired the three of them (for $2000 apiece plus a quantity of jewelry) to stage the robbery as part of an insurance fraud scheme.

Trial had commenced in the Superior Court on July 22, 1981. On July 30, 1981, testimony was completed, closing arguments were heard, and the case was submitted to the jury late in the day. The jury deliberated for less than an hour that evening and were instructed to reassemble in the jury room by 9:15 the following morning. At approximately 10:20 the next day, Friday, the trial judge received a note from the jury stating that they "would like to change the foreperson of the jury due to the fact that the present foreperson seems somewhat unable to preside this morning." (Record at 1088.) The judge remarked at that point that his chambers had received a telephone call earlier that morning indicating that a juror (the foreperson) would be late. (Record at 1089.) Shortly thereafter, the judge stated that the marshal had indicated there might be a question as to whether or not that juror was intoxicated. (Record at 1091.)

The judge then held a separate *voir dire* of each member of the jury, beginning with the foreperson, who denied that she had been drinking, stated that she did not feel ill, and suggested that the note from the jury may have been prompted by her "a little bit too straightforward" personality. (Record at 1093–96.) Of the other jurors, nine stated their belief that the jury foreperson had been (variously) "a little intoxicated," "drinking," "under the influence of some kind," or "drunk." (Record at 1102–1117.) However, one juror stated that there was no indication that the jury foreperson had been drinking. (Record at 1100.) In response to questions concerning the foreperson's conduct in deliberations the day before and during the course of the trial, only two jurors stated a belief that the foreperson may have been drinking or

intoxicated at any earlier time. Most of the jurors indicated that they had seen no evidence that the foreperson had been intoxicated the previous afternoon. However, several of the jurors stated their displeasure with the jury foreperson's overbearing personality during deliberations, suggesting that she had been "rude" and "unreasonable." (Record at 1088 and 1100.)

At the conclusion of the *voir dire,* the trial judge suggested that the appellants consider dismissing the foreperson and submitting the case to the remaining eleven jurors. Appellants decided against that course of action and instead moved for a mistrial. The court denied the motion, but ordered an immediate three-day recess for the weekend, stating a "hope" that the "offending juror [would be] perfectly sober and able to deliberate" on Monday morning. (Record at 1120.) The trial judge expressly asked the jury foreperson to "come back on Monday refreshed." (Record at 1127.) He said further that, when the jury reassembled on Monday morning, he would ask them to come into court, so that he could observe their demeanor to be assured that they were able to deliberate. (Record at 1124–25.) It is not disputed that the judge did look in on the jurors on Monday morning before they resumed deliberations and that he told counsel that he saw no disabilities. The jury then resumed deliberations with no further complaints or incidents.

Aside from the motion for a mistrial, which was denied, the appellants made no specific contemporaneous objections to the course of action taken by the trial court—the declaration of a recess, with the trial judge stating his intention to observe the jury's appearance prior to the resumption of deliberations. Nor had appellants objected to the scope of the court's inquiry into the problem of possible intoxication of the foreperson.

II

Appellants argue that the trial court erred in denying their motion for a mistrial on the basis of the apparent insobriety of the jury foreperson.[1] Appellants' argument amounts to a proposal for a per se rule that, whenever there are strong indications either of the use of intoxicating liquor by a juror, or of a juror's intoxication, during the course of jury deliberations, a mistrial is warranted.

However, in other cases involving similar allegations of misconduct this court has declined to adopt such a rule but has, instead, required a showing of some reasonable ground to suspect that the defendant was prejudiced by the behavior in question. *E.g., Nelson v. United States,* D.C.App., 378 A.2d 657 (1977). In the *Nelson* case, where it was argued that a juror's temporary absences from the deliberations had deprived the defendants of their right to a trial by jury, we noted that juror misconduct will not be tolerated if it has resulted in *"substantial prejudice"* to a defendant. *Id.* at 660 (emphasis added). We held in that case:

> ... not every irregularity in a juror's conduct compels reversal. The dereliction must be such as to deprive the defendant of the continued, objective, and disinterested judgment of the juror, thereby foreclosing the accused's right to a fair trial. [*Id.* (citations omitted).]

■ The showing of prejudice which we have required achieves a balance of the important competing interests at stake.[2]

---

1. The government argues that the evidence did not establish that the jury foreperson had been drinking. However, there were significant indications of an intoxication problem, and they prompted the trial court's action in ordering a recess. We will assume that the jury foreperson was, as the trial judge stated, "somewhat under the influence in a fashion ... that makes deliberations ... inappropriate at this time." (Record at 1119.)

2. The federal courts of appeals for the Third and Fourth Circuits have also imposed requirements of a showing of prejudice in similar cases. *See United States v. Provenzano,* 620 F.2d 985, 997 (3d Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980) (smoking of marijuana during the course of trial does not require new trial absent showing of prejudice; is not prejudicial as a matter of law); *United States v. Taliaferro,* 558 F.2d 724,

On the one hand is the right of the accused to have the charges against him or her fairly and competently considered; and the need to maintain public confidence in, and respect for, the integrity of the jury system. On the other hand are the interests of the parties in having the matter timely resolved; the need to avoid unnecessarily ordering new trials, at great expense of judicial resources, when there is no serious reason to believe that the accused has *not* had a fair and competent jury; and the dangers of the court's becoming excessively involved in, or exerting pressure upon, the jury's deliberative process. We will therefore adhere to the requirement of a showing of prejudice in the instant case.[3]

■ We conclude, further, that in the present case there is no serious reason to believe that the appellants were prejudiced by the jury foreperson's apparent inappropriate behavior. The jury deliberated for less than an hour on Thursday afternoon, during which time the evidence suggests that the foreperson was able to preside. There is insubstantial evidence that the jury foreperson was drinking earlier in the course of the trial or was more than simply overbearing prior to the second day of deliberations. On Friday morning, the foreperson was late arriving, but the jury was assembled for little more than an hour (from 9:15 until 10:20), during which time it appears they focused their attention on the selection of a new foreperson. It is thus doubtful that any significant deliberations occurred on Friday morning. As soon as the problem was brought to the court's attention, the *voir dire* was held and a recess was ordered; and on Monday morning, the

trial judge concluded that the juror was sober and competent to consider the case before he permitted the jury to resume deliberations.

During this whole process, only one juror was involved, and only a short period of the deliberations was called into question. There is no evidence that any drinking actually occurred in the jury room or during the course of the trial, and the jury foreperson was not conclusively shown to have been intoxicated at the time of *voir dire*. The recess, coupled with the judge's checking in on the jury on Monday, both of which were done with the concurrence of appellants' counsel, foreclosed the possibility of prejudice. Under these circumstances, it cannot reasonably be said that the appellants were substantially deprived of their right to the judgment of objective and competent jurors.

■ We now turn to appellants' second contention, that the trial court erred in not conducting a more extensive inquiry into the jury foreperson's competence to deliberate.

Before the trial judge held the *voir dire,* he consulted with counsel. When he conducted the *voir dire,* he questioned the jury foreperson directly concerning her capacity to deliberate, and at that point he had an opportunity to observe her demeanor. He then asked the other jurors on the panel specifically whether they believed the jury foreperson was experiencing any problems, such as drinking, which interfered with her capacity to function as a juror. He consulted with counsel again after the *voir dire* was completed. At no point before, during, or after the *voir dire* did appellants' counsel

---

726 (4th Cir.1977), *cert. denied,* 434 U.S. 1016, 98 S.Ct. 734, 54 L.Ed.2d 761 (1978) (showing of prejudice required when new trial sought because jurors drank alcoholic beverages during dinner recess).

**3.** This requirement is consistent with the National District Attorneys Association's National Prosecution Standards and with the American Bar Association's Standards for Criminal Justice, *which suggest that* a jury verdict should be impeached only when a juror has been in-

toxicated during deliberations "to such an extent as to interfere with the capacity to reach a verdict." *See* ABA, Standards for Criminal Justice 15–4.7 (2nd ed. 1980), commentary at 162, *quoting* NDAA, National Prosecution Standards 17.19(D) (1977), commentary at 286. The court in *State v. Tatlow,* 34 Kan. 80, 8 P. 267 (1885), cited in appellant Hines' brief, imposed the same requirement of a showing of prejudice on facts similar to those of the instant case.

object to the extent of the trial judge's questioning, or ask that he probe further into the situation, or request an opportunity to question the jurors themselves. Counsel, in effect, acceded to the scope of the inquiry. Considering that a full *voir dire* was held, that the court consulted with counsel and thus provided them with an opportunity to offer suggestions and express any concerns or dissatisfaction regarding his approach to the problem, and that preventive measures were available and were taken to avoid prejudice to the appellants, the trial judge's decision not to conduct a more detailed inquiry, *sua sponte,* was in our view not error. We conclude that the inquiry made was appropriate to the circumstances of this case.

### III

Appellants argue as an additional ground for reversal that the trial court improperly limited the evidence concerning certain uncharged criminal conduct of ADE, Allen Danneman, and Lori Greenstein. Appellants contend that they should have been allowed to elicit testimony showing that these complainants were the focus of a federal criminal investigation for racketeering and "fencing" stolen goods. They argue that such evidence would have been relevant to their defense of consent because it would have established that the victims had a reason to hire the appellants to stage a robbery of ADE, *i.e.,* to launder "hot" jewelry.

■ The law generally disfavors the admission of evidence of other crimes or misconduct to prove the character of a person to show that he acted in conformity therewith on the occasion in question. *See* McCORMICK ON EVIDENCE § 190 (E. Cleary ed. 1972); Fed.R.Evid. 404(b); *Drew v. United States,* 118 U.S.App.D.C. 11, 15, 331 F.2d 85, 89 (1964). *E.g., McLean v. United States,* D.C.App., 377 A.2d 74, 77 (1977). Although evidence of prior misconduct of an *accused* may be introduced for certain limited purposes, such as to establish motive or intent, a witness other than the accused may be asked about prior misconduct, not

amounting to a criminal conviction, only if it bears directly upon the veracity of the witness as to the issues involved in the trial. *Kitchen v. United States,* 95 U.S.App.D.C. 277, 279, 221 F.2d 832, 834 (1955), *cert. denied,* 357 U.S. 928, 78 S.Ct. 1378, 2 L.Ed.2d 1374 (1958). Even under those circumstances, the trial judge must balance the prejudicial effect of the proffered evidence against its probative value in determining whether to admit it. *Wooten v. United States,* D.C.App., 285 A.2d 308, 309 (1971); *United States v. Gay,* 133 U.S.App. D.C. 337, 339, 410 F.2d 1036, 1038 (1969), *cert. denied,* 400 U.S. 867, 91 S.Ct. 109, 27 L.Ed.2d 107 (1970). The trial court, within its discretion, may exclude the proffered evidence if it appears that the danger of unfair prejudice will outweigh its probative value; and that determination is reversible only for abuse of discretion. *Brown v. United States,* D.C.App., 409 A.2d 1093, 1099–1100 (1979).

■ In the instant case, the prejudicial impact of the proffered evidence is substantial: from evidence that the victims of the alleged burglary were themselves under criminal investigation, the jury would be permitted to infer that the victims had the kind of bad character which would make it likely that they had planned a staged robbery to defraud their insurers. On the other hand, the probative value of the evidence would not have been great: appellants' theory of relevance is somewhat tenuous, that the prior misconduct of ADE, involving stolen goods, would show that ADE planned the robbery in order to launder stolen jewelry. Moreover, the proffered evidence does not bear directly on the truthfulness of witnesses at trial. For these reasons, we conclude that there was no abuse of discretion on the part of the trial court in restricting the evidence concerning the prior misconduct of ADE, Danneman, and Greenstein. Further, we note that the appellants were not prejudiced by the trial court's ruling to this effect, since they were ultimately successful in getting much of the evidence before the jury nonetheless.

■ Finally, appellants raised another issue in their briefs, which was not dis-

cussed at oral argument.[4] They contend that a tape recording of the prearrest negotiations and a videotape of the arrest scene were improperly admitted into evidence because they were unfairly prejudicial and because they had not been disclosed in advance to defense counsel.

██ Both tapes were potentially highly prejudicial, permitting the inference that appellants were extremely dangerous and the inference that they were guilty simply because they refused to submit to arrest immediately. However, because the tapes had some probative value, at least as corroborative evidence, because their actual prejudicial impact was probably minimal (since the tapes were cumulative of other evidence), and because the trial judge gave a cautionary instruction to the jury, (Record at 1077–78), we conclude that the trial judge did not abuse his discretion in admitting the tapes despite their possible prejudicial effect.

██ Regarding the failure of the government to disclose the tapes to defense counsel in advance of trial, appellants rely upon Super.Ct.Cr.R. 16, which allows a defendant to discover his own recorded statements and real evidence, such as the videotape, which is within the government's custody. Assuming that the appellants had made a proper request for all such discoverable materials (which the government disputes), and assuming that late disclosure in the instant case did violate the requirements and purposes of Rule 16, the trial court had discretion to apply sanctions for the government's withholding evidence until trial. *See Lee v. United States,* D.C. App., 385 A.2d 159, 163 (1978). Reversal is warranted, however, only where there is error which has substantially prejudiced appellants' rights. *Id.* at 164. In light of our holding that the tapes themselves were not unfairly prejudicial, considering that defense counsel could have requested a recess to hear and view the tapes before they were played to the jury, but did not do so, and bearing in mind both that there was confusion as to whether a request for discovery had been made and that the government had only recently obtained the videotape, we conclude that the trial judge did not abuse his discretion in admitting the tapes into evidence.

In sum, the trial court committed no reversible error in any alleged respect.

*Affirmed.*

---

4. Appellant Hines argues two additional errors. He asserts that the trial court erred in denying his motion for acquittal and in admitting into evidence the money and jewelry taken from him when he was arrested. On the latter point, he argues that the money and jewelry were never properly identified as belonging to ADE. We reject both contentions. There was ample circumstantial evidence linking appellant Hines to the events which occurred at the ADE offices on the date in question, and there is evidentiary support for each element of the offense of which he was convicted. *See Jennings v. United States,* D.C.App., 431 A.2d 552, 555 (1981); *Frendak v. United States,* D.C.App., 408 A.2d 364, 370–71 (1979); *Williams v. United States,* D.C.App., 357 A.2d 865, 867 (1976). Appellant has failed to show, as required for a reversal on grounds of insufficient evidence, that "the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt." *Frendak, supra* at 371. Likewise, there was no abuse of discretion in the admission of the money and jewelry taken from Hines upon his arrest, since a chain of custody was established showing that those items had been taken from Hines, and since his codefendant Lee identified the property Hines had been carrying as ADE property.