No. 82–6780. MCILWAIN *v.* UNITED STATES; and
No. 82–6997. HINES *v.* UNITED STATES. Ct. App. D. C. Certiorari denied. Reported below: 454 A. 2d 770.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

I

Petitioners, convicted of second-degree burglary while armed, challenge their convictions on the ground that they were denied due process and the right to an impartial jury in violation of the Fifth and Sixth Amendments to the United States Constitution. Their claims stem from the fact that the deliberations of the jury that convicted them were disrupted by the intoxication of the

---

[6] As noted above, Whisenhunt was not Shawgo's supervisor.

foreman of the jury. On the second day of deliberations, Friday, July 23, 1981, the trial judge received a note from members of the jury stating that they "'would like to change the foreperson of the jury due to the fact that the present foreperson seems somewhat unable to preside this morning.'" *Lee* v. *United States*, 454 A. 2d 770, 772 (D. C. 1982). That morning, prior to receiving the note, the judge's chambers had received a call indicating that the foreman of the jury would be late. In addition, a marshal suggested to the judge that there might be some question as to whether one of the jurors was intoxicated.

The trial judge held a separate *voir dire* of each member of the jury. The foreman of the jury denied any intoxication, and one juror stated that there was no indication that the foreman had been drinking. Nine members of the jury stated that it was their belief that the foreman had been drinking. Their estimation of her degree of intoxication varied from observations that she appeared to be "a little intoxicated" to claims that she was flatly "drunk."[1]

At the conclusion of the *voir dire* the trial court suggested that the petitioners agree to an arrangement whereby the foreman of the jury would be dismissed and the case would be submitted to the remaining 11 jurors. Petitioners rejected that suggestion and proposed instead that the judge declare a mistrial. The trial judge acknowledged that the juror in question was "somewhat

---

[1] "JUROR CURLEY: I will tell it like it is. It seems like she is a little intoxicated. . . .

"JUROR FRAZIER: As far as I am concerned, she had been drinking this morning, Your Honor. . . .

"JUROR TYSON: She is not herself. She is just talking a lot . . . I assume she is under the influence of some kind. . . .

"JUROR FORD: I thought she was incompetent to preside because of the fact that she was a little intoxicated. . . .

"JUROR FLYNN: She did look like she was under the influence of alcohol . . . I do not think she should be a juror on this this morning. . . .

"JUROR JACKSON: She seemed to be under the influence of alcohol, sir . . . I think she still is a little intoxicated, unreasonable . . .

"JUROR WATSON: Well, it seemed like she had been drinking and she wouldn't let anyone else talk; just difficult to accomplish anything. . . .

"JUROR HUNTER: To my knowledge I think she had just a little too much to drink to be in this position that we are in . . .

"JUROR WALL: She is drunk. . . ." Pet. for Cert. of McIlwain 9.

under the influence in a fashion . . . that makes deliberations . . . inappropriate at this time." Pet. for Cert. of McIlwain 11. But the judge nonetheless denied the motion for a mistrial. Instead, he ordered an immediate 3-day recess, noting his hope that the "offending juror [would be] perfectly sober and able to deliberate" on Monday when deliberations would resume. *Lee* v. *United States,* 454 A. 2d, at 773. The judge expressly asked the juror to "come back on Monday refreshed." *Ibid.* Before the jury resumed deliberations on Monday, the trial judge "look[ed] in" on the jurors and informed counsel that he detected no further disability. *Ibid.* The jury acquitted the petitioners of armed robbery but convicted them of second-degree burglary while armed.

The District of Columbia Court of Appeals affirmed the petitioners' convictions on the ground that they had failed to show that they were prejudiced by the juror's intoxication. Justifying this conclusion, the Court of Appeals observed:

> "[O]nly one juror was involved, and only a short period of the deliberations was called into question. There is no evidence that any drinking actually occurred in the jury room or during the course of the trial, and the jury foreperson was not conclusively shown to have been intoxicated at the time of *voir dire.* The recess, coupled with the judge's checking in on the jury on Monday, both of which were done with the concurrence of appellants' counsel, foreclosed the possibility of prejudice. Under these circumstances, it cannot reasonably be said that the appellants were substantially deprived of their right to the judgment of objective and competent jurors." *Id.,* at 774.

This Court should grant certiorari and review the Court of Appeals' decision because it raises serious questions regarding the standard to be applied in determining the conditions under which a juror's misconduct and incapacity deprive a defendant of his Fifth Amendment right to due process and his Sixth Amendment right to an impartial jury.

## II

This Court has repeatedly insisted in a wide variety of contexts that the right to be tried before a jury capable and willing to decide a case solely on the evidence before it is a cornerstone of our

criminal justice system. See, *e. g.*, *Irvin* v. *Dowd*, 366 U. S. 717 (1961). This precious right is denigrated when a conviction resting upon deliberations tainted by a juror's gross and debilitating impropriety is allowed to stand.

The issue of juror misconduct usually involves allegations of juror bias. Here, however, the complaint is not that the juror in question was biased against the petitioners. Rather, the complaint is that the juror's drunkeness rendered her incompetent and that a necessary corollary of the right to an impartial jury is the right to a jury in which all of the members are mentally competent. This Court as well as other courts have recognized the right to a mentally competent jury. See, *e. g.*, *Jordan* v. *Massachusetts*, 225 U. S. 167, 176 (1912); *Sullivan* v. *Fogg*, 613 F. 2d 465 (CA2 1980) (trial before jury with an insane juror inconsistent with due process).

It is undisputed that one of the members of the jury—the person chosen to be its foreman—was inebriated during at least part of the deliberations.[2] The trial judge specifically found that the juror was "somewhat under the influence," and recessed the trial so that the offending juror would be able to deliberate after a 3-day respite. The extent of the juror's incapacitation is highlighted by the trial judge's suggestion that he simply dismiss her and allow the remaining jurors to decide the case on their own.

The Court of Appeals finds comfort in the fact that "only" one juror was intoxicated. Yet "only" one juror may be the difference between liberty and imprisonment. Due process requires that *every* member of a jury meet minimal requirements of mental competence and impartiality. The Court of Appeals also finds it relevant that "only a short period of the deliberations was called into question." 454 A. 2d, at 774. But the Court of Appeals cites no facts and gives no reasons which support the notion that the affected period of deliberations was insignificant. Given the delicate dynamics of jury deliberations, it is simply impossible to

---

[2] Although the Court of Appeals asserted that there is no evidence that drinking occurred during the course of the trial, two jurors indicated that the offending juror had been drinking during the trial, prior to the day she was examined by the judge. See *Lee* v. *United States*, 454 A. 2d 770, 772–773 (D. C. 1982); Pet. for Cert. of McIlwain 10–11.

know the effects the intoxicated juror had on her fellow jurors. Common sense would seem to indicate, however, that the general effect would not be conducive to the careful and objective deliberations upon which our criminal justice system relies.

In defending the decision of the Court of Appeals, the Government strongly relies upon this Court's holding in *Smith* v. *Phillips*, 455 U. S. 209 (1982). *Smith* involved allegations that a defendant had been denied due process because, during his state-court trial, one of the jurors applied to the prosecutor's office for a job as an investigator. The prosecutor learned of the application during the trial but failed to disclose this information until after the jury had convicted the defendant. The state court conducted a post-trial evidentiary hearing and determined that the juror was not actually biased. The Federal District Court, affirmed by the Court of Appeals, granted habeas corpus relief to the defendant on the ground that the juror's action had deprived the defendant of his constitutional right to an impartial jury. This Court reversed, holding that the post-trial evidentiary hearing provided sufficient protection for the defendant. Establishing a new standard by which to determine disputes over the integrity of jury deliberations, the majority of this Court declared that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.*, at 215.

*Smith* is a flawed ruling for reasons I have previously articulated. *Smith* v. *Phillips*, 455 U. S., at 224–244 (MARSHALL, J., dissenting). It misrepresents the factual circumstances of the incident that was at issue. *Id.*, at 229. It constitutes a departure from the mainstream of this Court's decisions concerning the integrity of jury deliberations. Cf. *Peters* v. *Kiff*, 407 U. S. 493, 502 (1972) (opinion of MARSHALL, J.) ("[E]ven if there is no showing of actual bias in the tribunal, this Court has held that due process is denied by circumstances that create the likelihood or the appearance of bias"). It posits a standard for challenging juror misconduct that is unrealistically demanding since proof of actual bias is virtually impossible to discover. *Smith* v. *Phillips*, *supra*, at 230–232. In sum, *Smith* was wrongly decided, exerts a baleful influence over this Court's consideration of analogous cases, and should be reconsidered.

Due process requires far more protection against juror misconduct than the "actual bias" test mandated by *Smith*. With respect to the cases at bar, due process may well require the grant-

ing of a mistrial whenever a trial judge finds that a juror, already engaged in deliberations, is so drunk that the deliberations must be recessed. This rule would undoubtedly affect very few trials; drunkenness on the part of active jurors is certainly an aberration. As to objections that this *per se* rule would create inconvenience and pose a drain on judicial resources, the only response is that such costs are what we must pay in order to give more than lip-service to our claim that trial by an impartial and competent jury constitutes a "priceless" right. See *Irvin* v. *Dowd, supra,* at 721. Because these cases present important issues implicating the constitutional right to a fair trial, I would grant the petitions.