831 F.2d 1063
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Earl W. HAYS, Plaintiff-Appellee,
v.
CONTINENTAL ASSURANCE COMPANY & Continental Casualty
Company, Defendants- Appellants.
 No. 86-5503.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1987.
 
 Before ENGEL, MERRITT and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Continental Assurance Co. and Continental Casualty Co., subsidiaries of CNA Financial Corp. (the defendant or CNA), appealed the jury verdict in favor of the plaintiff Earl W. Hays (the plaintiff or Hays) in this age discrimination suit pursuant to the ADEA. The primary issue raised on appeal was whether the district court's exclusion of the defendant's evidence calculated to develop the plaintiff's alleged drinking problem constituted an abuse of discretion and effectively denied the defendant a fair trial.
 
 
 2
 The district court declined to admit testimony concerning several instances suggestive of excessive alcohol use on the part of the plaintiff under Federal Rule of Evidence 403 on the basis that the risk of unfair prejudice to the plaintiff sufficiently outweighed any probative value of the proffered evidence. The trial court observed that the defendant's theory at trial was that the plaintiff had been discharged from his position as a life insurance sales office manager for disloyalty evidenced by his dealings with another insurance company in an attempt to secure employment with it, rather than for an alleged drinking problem, which concededly played no role in the defendant's decision to terminate the plaintiff. The district court additionally concluded that introduction of such evidence would necessitate further tangential lines of testimony and would be extremely prejudicial to the plaintiff before the jury, although the court permitted the defendant to explore specific instances of improper conduct by the plaintiff, such as alleged insubordination.
 
 
 3
 Having examined the record on appellate review in its entirety and having considered the briefs and arguments of the parties, this court cannot conclude that the district court's evidentiary rulings constituted an abuse of its well-recognized discretion in such matters. The experienced district judge clearly occupies a superior position to that of an appellate panel in conducting the balancing process mandated by Rule 403. The relative significance attached to the danger of unfair prejudice to the plaintiff as contrasted with the probative value of the proffered evidence by the district judge in this particular case was within a permissible range.
 
 
 4
 Similarly, this court discerns no merit in the defendant's remaining contentions. Initially, the district court's refusal to grant a new trial, on the basis that the jury's verdict was assertedly the result of an impermissible compromise on the issue of the defendant's liability under the ADEA, was not an improvident exercise of its discretion. Although the jury did return a damage award lower in amount than that sought by the plaintiff, the defendant had refused to stipulate to a mathematical calculation of plaintiff's unliquidated actual damages and the jury was not necessarily constrained to award the sum so requested. Moreover, the jury further returned a special verdict finding that the defendant had "willfully" discriminated against the plaintiff on the basis of his age so as to justify the imposition of liquidated damages by the court, and, when subsequently polled by the district judge, expressed no reservations regarding its liability determination. The jury in sum did not evidence confusion sufficient to cast doubt upon the reliability of its verdict. The defense counsel's affidavit concerning purported post-trial statements of two jurors lacked reliability as the district judge concluded, and in any case did not qualify as competent proof to impeach the verdict pursuant to F.R.E. 606. Far more egregious examples of jury misconduct have been found inadmissible for purposes of impeaching a jury verdict. See Tanner v. United States, 107 S.Ct. 2739 (1987)(inclusion of jury testimony as to juror alcohol and drug use during the trial would be barred by rule of evidence prohibiting impeachment of jury verdict). The court in Tanner reasoned that "public policy requires a finality to litigation. And common fairness requires that absolute privacy be preserved for jurors to engage in the full and free debate necessary to the attainment of just verdicts. Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation. In the interest of protecting the jury system and the citizens who make it work, rule 606 should not permit any inquiry into the internal deliberations of the jurors." Id. at 2750.[1]
 
 
 5
 Finally, this court is of the opinion that the district court correctly instructed the jury on the subject of a willful violation of the ADEA and that the jury's willfullness determination was sufficiently supported by the evidence presented in the case.
 
 
 6
 Based upon the foregoing, the judgment of the district court is accordingly AFFIRMED.
 
 
 
 [1]
 The court described at length the policy considerations underlying its ruling in Tanner, 107 S.Ct. at 2751:
 [L]ong-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry. Petitioners' Sixth Amendment interests in an unimpaired jury, on the other hand, are protected by several aspects of the trial process. The suitability of an individual for the responsibility of jury service, of course, is examined during voir dire. Moreover, during the trial the jury is observable by the court, by counsel, and by court personnel. See United States v. Provenzano, 620 F.2d 996-997 (CA3 1980) (marshal discovered sequestered juror smoking marijuana during early morning hours). Moreover, jurors are observable by each other, and may report inappropriate juror behavior to the court before they render a verdict. See Lee v. United States, 454 A.2d 770 (DC App. 1982), cert. denied, sub nom., McIlwain v. United States, 464 U.S. 972, 104 S.Ct. 409, 78 L.Ed.2d 349 (1938)(on second day of deliberations jurors sent judge a note suggesting that foreperson was incapacitated). Finally, after the trial a party may seek to impeach the verdict by nonjuror evidence of misconduct. See United States v. Taliaferro, 558 F.2d 724, 725-726 (CA4 1977)(court considered records of club where jurors dined and testimony of marshal who accompanied jurors to determine whether jurors were intoxicated during deliberations).