**Richard GOLSUN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 89–1222.

District of Columbia Court of Appeals.

Argued April 18, 1991.

Decided June 13, 1991.

FERREN, Associate Judge:

The trial court used an old fashioned decision-making tool to decide which of two jurors who may have been sleeping during the trial would be replaced by the only remaining alternate juror: the courtroom clerk tossed a coin. When the coin landed tails, the court replaced juror 7 and left juror 4 to deliberate. The jury convicted appellant of possession, and possession with intent to distribute, PCP and marijuana, D.C.Code § 33–541(a)(1) (1988). Not surprisingly, appellant claims the trial court abused its discretion by employing this method to decide which juror should be replaced by an alternate. We agree that the court erred in relying on a coin toss, rather than on the court's own judgment after voir dire of the ostensibly sleeping jurors, to decide a matter committed to judicial discretion. Under the circumstances, however, absent objection by counsel, we review for plain error and conclude there was no miscarriage of justice requiring reversal.

Appellant also contends that certain comments of the prosecutor during closing argument constituted misconduct warranting reversal, and that the trial court erred in questioning a defense witness about his prior convictions. Neither contention has merit.[1] Accordingly, we affirm.

## I.

Metropolitan Police Officer Wayne Stancil, working undercover, was assigned to buy drugs at 203 N Street, S.W., a five-story public housing project known for drug sales. As he entered the breezeway to the complex, he noticed two men later identified as appellant and Michael Jenifer. Jenifer said, "Boat," and Stancil said, "Yes." As Stancil approached Jenifer, appellant said, "Roller," apparently a street term for "police." Stancil opened his jacket to show he did not have a gun. Jenifer then said, "No, he's okay. He's my customer." Jeni-

Betty M. Hunter, Washington, D.C., for appellant.

Teresa A. Howie, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas C. Black, and Wanda G. Bryant, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Before FERREN, SCHWELB, and WAGNER, Associate Judges.

1. Appellant also argues, unconvincingly, that there was insufficient evidence to support his conviction for possession with intent to distribute PCP and marijuana, and that the trial court erred in denying his mistrial motion based on the trial court's personal animosity toward defense counsel.

fer, Stancil, and appellant went into a hallway where Jenifer took a plastic bag containing several tinfoil packets from a broken circuit box and gave two packets to Stancil. While Stancil examined the packets, appellant asked Stancil to purchase one from him. Appellant reached under his shirt and showed Stancil a plastic bag containing numerous tinfoils. Stancil examined a tinfoil that appellant gave him and noticed a greenish weed substance that smelled of PCP. Stancil began to laugh, amazed that appellant would sell drugs to a person appellant believed to be a policeman. Just as appellant retorted, "I told you he was police," Stancil identified himself as a police officer. Jenifer and appellant bumped into each other attempting to run away. Jenifer did get away (he was apprehended later), but appellant fell on the floor dropping the plastic bag. Appellant was arrested on the scene.

## II.

■ Appellant challenges the method the trial court used for replacing one of the two jurors excused before the jury deliberated. After closing arguments, appellant's counsel requested that juror 8 be excused for inattentiveness. The judge postponed decision until after instructing the jury. At the conclusion of its instructions, the court noted that jurors 4 and 7 had slept through the instructions. Counsel moved

for a mistrial, which the trial court denied. Counsel then asked that, of the three questionable jurors, numbers 7 and 8 be replaced by the two alternates because number "4 appear[ed] to be on top of the game, for most of the time." [2] The court agreed to replace juror 8 with an alternate. The court then asked the courtroom clerk to flip a coin to determine whether juror 4 or juror 7 would be replaced by the other alternate. When the coin landed tails, the trial court excused jurors 7 and 8. Appellant's counsel did not object to the coin toss, or to replacing jurors 7 and 8, or to juror number 4's remaining on the jury. We therefore review for plain error, *i.e.*, error "so clearly prejudicial to [appellant's] substantial rights as to jeopardize the very fairness and integrity of the trial." *Jones v. United States*, 512 A.2d 253, 258 (D.C. 1986) (quoting *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc)).

■ Here, the court itself noticed that jurors 4 and 7 were sleeping during its instructions; this is not a case of an unsubstantiated claim by defense counsel. *See Brommer v. United States*, 157 A.2d 292, 293 (D.C.1960) (unsubstantiated defense accusation that juror was sleeping insufficient basis for concluding trial court abused discretion in refusing to grant mistrial). For reasons not clear of record, however, the trial court did not stop the proceedings to make sure that all jurors

---

**2.** Counsel later said that he wanted jurors 4 and 8 to be excused. However, the transcript suggests that counsel misspoke; he had clearly stated reasons for excusing jurors 7 and 8.

THE COURT: What are you going to do about Number 7 and Number 4, who slept through instructions?

[DEFENSE COUNSEL]: Your honor, I suspect that, given the length of the instructions, that was a very difficult exercise for these jurors. I noted people who weren't paying attention—shifting around in their seats—I think the evidence is they weren't totally—managed to be somewhat alert for half of the instructions, which were very repetitive—

THE COURT: They were long—they were gone by the time—

[COUNSEL]: They were gone—?

THE COURT: By the time I reached the instruction on the offenses, they were sleeping.

 * * * * * *

THE COURT: The question is, who goes?

[COUNSEL]: I would opt for 8 and—I'd opt for 7, to go out, as opposed to 4, because I know that 7 was a little less than attentive than 4; 4 appears to be on top of the game, for most of the time. That would be—

THE COURT: There is no law in this jurisdiction—

[COUNSEL]: 4 and 8, I believe, would be my preference.

THE COURT: 4 and 8?

[COUNSEL]: Yes.

THE COURT: Okay. Heads is 4, tails is 7. Flip it, and tell us what it is, Joyce; do you understand?

THE DEPUTY CLERK: Yes. Tails.

THE COURT: Tails—so, who goes? 7.

[COUNSEL]: 7 goes?

THE COURT: Yes.

[COUNSEL]: And 8 goes?

THE COURT: Yes, 7 and 8 go.

were attentive, or to provide a break for the jury, if appropriate, or even to reinstruct if the court believed that would be helpful. At the very least, the court should have stopped its instructions to determine whether the two jurors were "sleeping during trial and, if so, [to determine] whether the jurors['] being asleep prejudiced [appellant] to the extent that he did not receive a fair trial." *United States v. Barrett*, 703 F.2d 1076, 1083 (9th Cir.1983) (citing *United States v. Hendrix*, 549 F.2d 1225, 1229 (9th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977)).

■■■ In general, the trial court has considerable discretion in determining whether to hold an evidentiary hearing on allegations of jury misconduct. *See Hendrix*, 549 F.2d at 1227. Accordingly, if a proffered allegation of juror inattentiveness is not substantiated in any way, the court may reject it summarily. *See, e.g., Brommer*, 157 A.2d at 293 (no error in denying mistrial when prosecutor and judge could not confirm defense allegation that juror was asleep).[3] On the other hand, if—as in this case—the court notices, or is informed, that a juror is asleep during trial, the court has a responsibility to inquire and to take further action if necessary to rectify the situation. *See, e.g., Barrett*, 703 F.2d at 1083 (abuse of discretion for judge to do nothing after juror told judge he was asleep during trial); *People v. Evans*, 710 P.2d 1167, 1168 (Colo.Ct.App.1985) (trial court abused discretion by failing to grant mistrial when one juror slept during defense counsel's closing argument and court limited its response to post-trial contempt hearing on juror's misconduct). The trial court should begin, for example, with a hearing to determine whether the juror had been asleep and, if so, whether the juror had "miss[ed] essential portions of the trial." *Barrett*, 703 F.2d at 1083 n. 13. On the basis of its findings the court should then determine whether the juror's conduct had resulted in "substantial prejudice" to the accused, meaning deprivation "of the continued, objective, and disinterested judgment of the juror, thereby foreclosing the accused's right to a fair trial." *Lee v. United States*, 454 A.2d 770, 773 (D.C. 1982) (court voir dired jury upon allegations foreman was drinking or drunk and jury could not reach verdict), *cert. denied*, 464 U.S. 972, 104 S.Ct. 409, 78 L.Ed.2d 349 (1983) (quoting *Nelson v. United States*, 378 A.2d 657, 660 (D.C.1977)); *see Barrett*, 703 F.2d at 1083 n. 13; *Hendrix*, 549 F.2d at 1229.

The court, as a result of its findings, might decide to permit the juror to continue to participate. *See Barrett*, 703 F.2d at 1083 n. 13. Or the court might excuse the juror for cause and replace the juror with an alternate. *See Shreeves v. United States*, 395 A.2d 774, 787 (D.C.1978) (trial court acted within its authority in substituting alternates for two inattentive jurors at conclusion of second phase of bifurcated trial), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979); Super.Ct. Crim.R. 24(c) (alternate jurors "shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties"). Or, finally, the court might declare a mistrial. *See Evans*, 710 P.2d at 1168.

In this case, defense counsel proffered that one juror had been inattentive; the court itself volunteered that two other jurors had been sleeping during final instructions. In deciding to replace two of these jurors with alternates, the court was acting on a matter committed to trial court discretion, reviewable for abuse. *See Barrett*, 703 F.2d at 1083. The court accordingly was obliged to proceed rationally, not arbitrarily. As we have said:

Discretion signifies choice....

The trial court nevertheless must choose wisely so that its judgment reflects 'a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the

---

3. Some courts have allowed a trial judge to take judicial notice of the fact that the juror had not been asleep without requiring further inquiry. *See United States v. Curry*, 471 F.2d 419, 421–22

(5th Cir.), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973); *United States v. Carter*, 433 F.2d 874, 876 (10th Cir.1970).

circumstances and the law, and directed by the reason and conscience of the judge to a just result.' ... As in its other decision-making activity, the court's substantial freedom of choice in an exercise of discretion must be tempered by rationality.

*Johnson v. United States,* 398 A.2d 354, 361 (D.C.1979) (quoting *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931)). We accord the trial court substantial deference in exercising its discretion because of the court's familiarity with the proceedings, its observations of the witnesses and lawyers, and its superior opportunity to get a feel for the case. *See Johnson,* 398 A.2d at 362. None of these reasons supports flipping a coin to make a discretionary decision. The court was obliged to evaluate the facts and to resolve the matter using sound discretion that took into account the substantial rights of the parties, including the defendant's constitutional right to a fair and impartial jury. *See Lee,* 454 A.2d at 774. The trial court accordingly erred in arbitrarily deciding who should sit on the jury once appearances of juror inattention—which the court itself noticed—were evident. The question thus becomes: whether the error was of a magnitude requiring reversal, *see Johnson,* 398 A.2d at 366—in this case plain error amounting to a miscarriage of justice.

 In the first place, we note that the attentiveness of three jurors was in question with only two alternates available for replacement purposes. Appellant was entitled to a twelve-person jury absent a stipulation "that a valid verdict may be returned by a jury of less than twelve (12) should the Court find it necessary to excuse one or more jurors for any just cause after trial commences." Super.Ct.Crim.R. 23(b). This case, therefore, potentially presented the need for a mistrial if three jurors had to be disqualified. Defense counsel moved for a mistrial when it was revealed that three jurors may have been asleep during

instructions, but the court summarily denied that motion because two alternate jurors were available.

Thereafter, defense counsel did not object to the trial's continuing, to the method of selection, to the remaining jurors' competency, or to anything else. Nor does counsel, on appeal, claim that the trial court abused its discretion in refusing to grant a mistrial.

As it turned out, there is apparently no question that both trial court and defense counsel, without objection by the prosecutor, agreed that juror 8 should be excused. Accordingly, the issue became whether juror 4 or juror 7—or both—should have been excused. Counsel apparently was satisfied to go forward with jury deliberations after the court disqualified only one of these jurors. The only issue on appeal, therefore, is the impact of the trial court's erroneous methodology for selecting between juror 4 (who stayed) and juror 7 (who was excused).

To justify reversal, appellant must demonstrate that the court's error in exercising discretion by coin flip resulted in "substantial prejudice." *Lee,* 454 A.2d at 773 (no mistrial unless defendant substantially prejudiced by juror intoxication); *Nelson,* 378 A.2d at 660 ("not every irregularity in a juror's conduct compels reversal").[4] No prejudice amounting to a miscarriage of justice is apparent on this record. The trial court agreed with counsel's request for replacement of juror 8 because of inattentiveness; the coin flip resulted—fortuitously—in the replacement of juror 7, as defense counsel preferred; and counsel had no problem with juror 4's remaining on the jury, since, according to counsel, juror "4 appear[ed] to be on top of the game, for most of the time." *See supra* note 1. [132–33] There is no indication that counsel was displeased with the result. He did not even request voir dire to determine whether juror 4 should remain on the jury. Nor

---

**4.** *See also United States v. Provenzano,* 620 F.2d 985, 997 (3d Cir.) (no prejudice requiring mistrial from juror's smoking marijuana during trial), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *United States v. Taliaferro,*

558 F.2d 724, 726 (4th Cir.1977) (no prejudice requiring mistrial from juror's drinking alcohol during dinner recess), *cert. denied,* 434 U.S. 1016, 98 S.Ct. 734, 54 L.Ed.2d 761 (1978).

can we even assuredly say the trial court found that juror 4 had been sleeping. In short, given that the issue framed for appeal is narrowly addressed to methodology, and further given that the coin flip turned out the way defense counsel hoped it would, the record is devoid of any evidence of prejudicial error.

### III.

■ Appellant contends that the prosecutor engaged in misconduct, in closing argument, by implying that the presumption of innocence was no longer in force and that appellant, accordingly, had to prove his innocence:

Now, if you recall, at the beginning of this case, early on in it, in the case, the judge indicated that this defendant came into court presumed to be innocent. And that is, indeed, the case. That is the case in every criminal case in this nation. When a person accused is charged, they are presumed to be innocent throughout the course of the trial.

At this point, ladies and gentleman, that presumption of innocence should have slipped away. Based on the evidence that you have heard, the testimony that you have heard, and the evidence that you have seen in this courtroom, that presumption should not exist any longer, and I contend to you that it does not exist any longer—that presumption exists, and the Court will instruct you, unless and until you find him guilty beyond a reasonable doubt.

Now, why should that presumption of innocence no longer apply? It's because—has there been anything at all innocent indicated in this courtroom about this man, Richard Golsun? Any testimony, any evidence that would indicate that he is innocent of anything? Have the witnesses that the Government put before you indicated, in any way, that he is innocent of anything? Have the witnesses that the defense has put before you indicated, in any way, that he is innocent of anything?

So, that presumption is there. It's there for his protection; it's there for the

Court's protection; it's there for the Government's protection. But, ladies and gentlemen, after you hear the evidence in a case, you don't run from it; you don't have to back away from it. But you do have to decide—make your decision based on that evidence. And I would urge you that the evidence you have before you is credible, competent, admissible evidence—enough to decide this case.

In evaluating a prosecutor's statements, we first determine whether misconduct occurred. If it did, "then, viewing the comments in context, we must consider the gravity of the misconduct, its relationship to the issue of guilt, the effect of any corrective action by the trial judge, and the strength of the government's case." *Irick v. United States*, 565 A.2d 26, 32 (D.C. 1989) (citation omitted); *see Parks v. United States*, 451 A.2d 591, 611–12 (D.C.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983). Absent objection at trial, we review once again for plain error. *See Jones*, 512 A.2d at 258.

The government, on appeal, concedes the prosecutor's comments "may have been inartful." No doubt they were. Prosecutors should not suggest, in closing argument to the jury, that the "presumption of innocence should have slipped away" or question whether there was any evidence "that would indicate [appellant] is innocent of anything." Such comments at best are confusing and at worst may be taken to suggest that the defendant must provide evidence of innocence rather than rely on the government's burden to rebut the presumption of innocence with proof of guilt beyond a reasonable doubt.

Even if we assume that the argument was improper, however, we find no plain error. Here, the improper comments were made immediately after the prosecutor had clearly stated that appellant should be "presumed to be innocent throughout the course of the trial." Furthermore, immediately after the improper comments, the prosecutor reaffirmed that the "presumption is there" but that the jury should not "back away" or "run from" the evidence

and thus should "make your decision based on that evidence." In rebuttal closing argument, moreover, the prosecutor focused entirely on the evidence, emphasizing that the government's evidence supplied "proof, beyond a reasonable doubt, that these events did occur just as Officer Stancil, Officer Timberlake, Officer Williams indicated to you, and Officer Davis indicated to you, out there that night." Finally, after all closing arguments the trial court, in final instructions to the jury, said:

> Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial, unless and until he is proven guilty beyond a reasonable doubt. The burden is on the Government to prove the defendant guilty beyond a reasonable doubt. This burden of proof never shifts throughout the trial. The law does not require a defendant to prove his innocence, or to produce any evidence.

We conclude, therefore, that the prosecutor's improper comments were sufficiently diluted by her own corrective statements that, when coupled with the trial court's instructions, no plain error occurred.

### IV.

██ Appellant maintains that the trial court erred in clarifying a defense witness's prior convictions during cross-examination. The government impeached Jenifer with two prior convictions. After the prosecutor successfully questioned him about the first conviction, she was unable to identify correctly the illegal narcotic that was involved in the second conviction. The court took the record of the conviction from the government and asked Jenifer if he had been convicted of the charges contained in the jacket. Appellant's counsel did not object; we again review for plain error. *See Jones,* 512 A.2d at 258.

██ A trial court may participate directly in the trial, including the questioning of witnesses about facts essential to the case, *see Davis v. United States,* 567 A.2d 36, 39 (D.C.1989), and may question witnesses called by any party, although this power "should be sparingly exercised." *Green-*

*how v. United States,* 490 A.2d 1130, 1135–36 (D.C.1985). The court's questioning in this instance concerned only a second prior conviction (the government had successfully impeached Jenifer with another conviction) and was apparently perceived as innocuous enough that counsel—who at other times was frank in questioning the trial court's actions—did not even object. In these circumstances, we cannot find plain error. *See id.* at 1136 (judicial error cross-examining witness not plain error).

Affirmed.