JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant, Louis C. Samuels, appeals from the judgment of the Cuyahoga County Common Pleas Court, rendered after a jury trial, finding him guilty of three counts of aggravated menacing and sentencing him to 18 months incarceration. For the reasons that follow, we reverse and remand.
 {¶ 2} In June 1999, the Cuyahoga County Grand Jury indicted appellant on one count of domestic violence. Appellant subsequently pled guilty to the indictment, as charged, and was sentenced to community control sanctions for three years.
 {¶ 3} In February 2002, appellant was indicted on two counts of burglary, in violation of R.C. 2911.12, and three counts of aggravated menacing, in violation of R.C. 2903.21. Appellant pled not guilty to the charges. The State subsequently dismissed one of the burglary charges.
 {¶ 4} At trial, Maureen Kiernan testified that on November 23, 2001, she lived in an apartment located on Surrey Road in Cleveland Heights. She rose at approximately 5:00 a.m. that morning and, as was her routine, read the paper and drank coffee for approximately one hour before her morning run. As she was in the bathroom getting dressed for her run, Kiernan heard a loud noise, but ignored it, thinking it was her upstairs neighbor opening her window.
 {¶ 5} When she left her apartment at approximately 6:30 a.m. for her run, Kiernan saw someone standing on the driveway, close to the corner of her apartment building. Kiernan testified that she thought this was peculiar because she never saw anyone standing so close to the building at that time of the morning.
 {¶ 6} Kiernan returned to her apartment after her run. A short time later, upon entering her bedroom, she observed a wadded-up piece of paper on the floor in front of the bedroom window. Kiernan testified that she kept the window open about five inches because her apartment was usually rather warm.
 {¶ 7} Opening the piece of paper, Kiernan discovered a piece of notebook paper with handwriting on it. She read:
 {¶ 8} "Don't be frightened, you are a very beautiful woman. Your breasts are also beautiful. You're very sexy, someone doesn't appreciate you or they would be right there, your sex slave. If you are offended behind this letter you need shades. If you want me to make sweet love to you, I'm on the other side of your door. I love your body. You're very sexy. I'll suck your asshole if you want me to. You've got whatever you want around now. You got by (sic) cock hard. No, I'm not stalking you. Every man around here's cock is rock hard over you. Yours truly, Billy."
 {¶ 9} Kiernan immediately called the Cleveland Heights Police Department and police officer Joseph Burghardt responded to Kiernan's apartment. After examining the area in the bedroom where the note was found and the area outside the bedroom window, Burghardt determined that someone could have put the note in Kiernan's bedroom by pulling himself up on an old coal bin outside the apartment, raising the screen and throwing the note into the bedroom through the slightly raised bedroom window. Although Burghardt did not find any useable fingerprints on the screen, he submitted the note found in Kiernan's apartment to the Lake County Crime Lab for analysis.
 {¶ 10} Michelle Ferfolia testified that on November 28, 2001, she lived in an apartment on Lenox Road in Cleveland Heights with her roommate Katherine Opsincs. As she walked to the back door of the apartment early that morning, Ferfolia noticed a piece of paper on the floor. She picked it up and read:
 {¶ 11} "Don't be afraid. I find you very beautiful. I've seen your beautiful body. You have a nice pussy. I love your black panties. You got every man around here cock hard. I love to have. Sit on my face. Sexy ass. I know you're freaky also, or you would have a shade on your window. Let me make sweet love to you. I right outside here."
 {¶ 12} Ferfolia showed the noted to Opsincs. According to Ferfolia, she and Opsincs were terrified that the person who wrote the note was waiting for them outside the back door of their apartment so they left together through the front door to attend school. When they returned home later in the afternoon, they called the police. Appellant was arrested after Ray Jorz, a forensic print examiner at the Lake County Crime Laboratory, found a fingerprint matching appellant's on one of the notes. Subsequently, pursuant to court order, appellant gave a handwriting sample to the police. Andrew Szymanski, a forensic document examiner at the Lake County Crime Laboratory, testified that he analyzed the handwriting on the notes found in Kiernan's and Ferfolia's apartments and the handwriting sample from appellant. According to Szymanski, although he could not conclusively identify appellant as the author of the notes, in his opinion, to a reasonable degree of scientific certainty, "there were indications based on the evidence submitted that Louis Samuels prepared the two questioned notes."
 {¶ 13} The jury subsequently found appellant not guilty of burglary, but convicted him of three counts of aggravated menacing. The trial court sentenced appellant to six months incarceration on each count, the sentences to be served consecutively. Because appellant committed the offenses while on community control sanctions imposed in Case No. CR 377150, the trial judge also imposed the original sentence of twelve months incarceration for appellant's domestic violence conviction.
 {¶ 14} Appellant timely appealed, raising four assignments of error for our review.
 I. {¶ 15} In his first assignment of error, appellant asserts that the trial court erred in denying his Crim.R. 29 motion for acquittal because the State failed to present sufficient evidence to support his conviction for aggravated menacing. Appellant contends that the evidence was insufficient because the notes were not threatening and there was no evidence that appellant knowingly caused the victims to believe that he would cause them serious physical harm.
 {¶ 16} R.C. 2903.21, which defines the offense of aggravated menacing, provides in pertinent part:
 {¶ 17} "(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person or member of his immediate family."
 {¶ 18} Whether a threat sufficient to support a charge of aggravated menacing has been made is a question of fact and one to be determined by the trier of fact. Dayton v. Dunnigan (1995),103 Ohio App.3d 67, 71, citing United States v. Bellrichard (C.A.8, 1993), 994 F.2d 1318. The relevant inquiry to be made by a reviewing court is whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. This is a particularly important standard of review when the judgment by the trier of fact is necessarily founded in large part on the credibility of the witnesses. Dunnigan, supra, citing Myers v. Garson (1993),66 Ohio St.3d 610, 614; State v. Evans (1993), 67 Ohio St.3d 405,410-411. An appellate court abuses its discretion when it substitutes its judgment for that of the trier of fact as to the credibility of witnesses. State v. Walker (1978), 55 Ohio St.2d 208.
 {¶ 19} Here, there is certainly sufficient credible evidence in the record to support the jury's finding that the three victims felt seriously threatened with physical harm upon their discovery of the notes. First, the notes were found inside the victims' apartments, suggesting that the writer of the notes could easily get into the apartments. Moreover, even though the notes did not contain explicit threats, they were sexually explicit, detailing appellant's desire to perform certain sexual acts on the victims. Moreover, the note found in Ferfolia's and Opsincs' apartment stated, "I'm right out here." Ferfolia and Opsincs both testified that upon finding the note, they were terrified that the author of the note was waiting for them outside their back door. They testified further that after finding the note, they no longer felt safe being alone in their apartment. They installed alarms on both the front and back apartment doors, as well as a metal grate over the window in the back door. For weeks after finding the note, Opsincs slept at her parents' home, rather than at the apartment.
 {¶ 20} Likewise, Kiernan testified that she was so fearful for her safety that she did not run alone again in the morning for several weeks after finding the note. She testified further that because she feared someone was constantly watching her, she called the police for an escort when she went out alone.
 {¶ 21} In light of this evidence, we find appellant's conviction for aggravated menacing supported by sufficient evidence. Appellant's first assignment of error is therefore overruled.
 II. {¶ 22} In his second assignment of error, appellant contends that the trial court erred in allowing Andrew Szymanski to testify as an handwriting expert.
 {¶ 23} A trial court has broad discretion in admitting and excluding expert testimony; accordingly, a reviewing court will not reverse a trial court's evidentiary rulings absent an abuse of discretion. Scott v. Yates (1994), 71 Ohio St.3d 219, 221. An abuse of discretion involves more than an error of law or judgment; to warrant reversal the trial court's action must be arbitrary, unreasonable or unconscionable. Berk v. Matthews (1990) 53 Ohio St.3d 161, 169.
 {¶ 24} Evid.R. 702 provides that a witness may testify as an expert if: 1) the witness' testimony relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; 2) the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and 3) the witness' testimony is based on reliable scientific, technical, or other specialized information. Moreover, an expert opinion is competent only if it is held to a reasonable degree of scientific certainty. State v.Benner (1988), 40 Ohio St.3d 301, 313.
 {¶ 25} The Ohio Supreme Court has recognized that persons skilled in handwriting analysis may offer expert opinions regarding handwriting comparisons. State v. Loza (1994), 71 Ohio St.3d 61, 77. Appellant contends that Szymanski should not have been allowed to testify as an expert, however, because he could not conclusively identify appellant as the author of the notes found in Kiernan's and Ferfolia's apartments. Appellant contends that Szymanski's opinion that "there were indications
based on the evidence submitted that Louis Samuels prepared the two questioned notes" was nothing more than speculation, without any reliable or scientific basis, and, accordingly, did not meet the requirements of Evid.R. 702. We disagree.
 {¶ 26} Szymanski, who had specialized training in handwriting analysis and seven years experience as a document examiner at the Lake County Crime Laboratory, testified that there are recurring characteristics in an individual's handwriting. He testified further that he compared the two notes and appellant's handwriting sample, side by side, examining specific, identifiable handwriting characteristics, such as letter formation, connecting strokes, slants and spacing of the handwriting. From this analysis, he concluded, to a reasonable degree of scientific certainty, that the notes were written by the same individual. He concluded further, also to a reasonable degree of scientific certainty, that there were "indications" that appellant had written the notes. Specifically, Szymanski identified the following similarities between the handwritten notes and appellant's handwriting sample: the construction of the letter "B," the short formation of the letter "Y," the weaving stroke of the letter "H," the formation of the capital letter "I," the shape of the lead-in stroke for the letter "S," the similarity of a "T-O" combination, and the shape of the letter "N."
 {¶ 27} It is apparent, therefore, that Szymanski's conclusion that there were "indications" that appellant wrote the notes was based upon specialized information related to handwriting analysis, such as the slant, size relationship, flow and letter formation. Furthermore, it is apparent that although Szymanski could not conclusively identify appellant as the author of the notes, his opinion that there were "indications" that appellant authored the notes was not mere speculation but was based on similarities between the notes and handwriting sample that Szymanski identified in light of his extensive experience and expertise in handwriting analysis. Contrary to appellant's argument, Szymanski's opinion was based on specialized knowledge, not mere speculation, and was held to a reasonable degree of scientific certainty. Accordingly, it met the requirements of Evid.R. 702 and, therefore, the trial court did not abuse its discretion in allowing Szymanski to testify as a handwriting expert.
 {¶ 28} Appellant's second assignment of error is overruled.
 III. {¶ 29} Shortly after deliberations began, one of the jurors advised the trial court that there was an exhibit in the jury room that had not been admitted into evidence. The exhibit was a single sheet of paper entitled "Sheriff's Office, Cuyahoga County, Cleveland, Ohio, Scientific Identification Bureau, Face Sheet" and was found in the envelope in which State's Exhibit 12, appellant's fingerprint card, was contained. The front page of the exhibit noted that appellant was arrested on November 16, 1987 and contained appellant's name, address and other information regarding his physical characteristics. The back page of the exhibit listed dates from August 18, 1988 through June 29, 1999 and appellant's name, address and a charge for drug abuse or domestic violence corresponding with each date. Each charge also stated "refer to additional arrest card."
 {¶ 30} Both defense counsel and the prosecutor informed the trial judge that neither party had intended the Face Sheet to be in the envelope containing State's Exhibit 12 and that it was an oversight by both parties.
 {¶ 31} The trial judge voir dired the juror who had brought the exhibit to the court's attention. The juror testified that he saw the Face Sheet being passed around the table. When the juror next to him asked him if he wanted to look at it, he informed her that the exhibit did not look familiar to him. She then told him, "This is his rap sheet." The juror then took the Face Sheet from the other juror and informed the bailiff that the jury might have an exhibit that it was not supposed to be looking at.
 {¶ 32} The juror testified that the Face Sheet had been "brought up very briefly" and someone made a comment that "there was a history of domestic violence." The juror testified, however, that "a couple other people immediately said we don't know if that is a piece of evidence, and we shouldn't discuss that or even think about it until the bailiff comes back and instructs us." The trial judge then specifically questioned the juror:
 {¶ 33} "But you are saying so far you guys haven't considered that in your deliberations at all?"
 {¶ 34} The juror responded, "Not at all."
 {¶ 35} The trial judge then instructed the jury that the Face Sheet was not evidence in the case and, accordingly, it was not to consider the document or its contents in its deliberations. The judge then asked each juror whether he or she was "able to continue with your deliberations and fairly and impartially continue to deliberate." After each juror responded affirmatively, the trial court denied appellant's motion for a mistrial.
 {¶ 36} In his third assignment of error, appellant contends that the trial court erred in denying his motion for a mistrial because the judge's instruction to the jury did not cure the prejudice to appellant by the inadvertent disclosure of the Face Sheet to the jury. We agree.
 {¶ 37} A mistrial is an extreme remedy which is only warranted in circumstances where a fair trial is no longer possible and mistrial is required to meet the ends of justice. State v. Jones (1992),83 Ohio App.3d 723, 737. A mistrial should not be ordered in a criminal case "merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected." State v. Lukens (1990), 66 Ohio App.3d 794, 809. As a reviewing court, we show deference to the trial judge, who sees and hears the events and thus is in a better position to accurately evaluate the situation and determine the appropriate scope of inquiry. State v.Hessler (2000), 90 Ohio St.3d 108, 115-116. Therefore, we will not reverse the trial court's denial of a motion for mistrial absent an abuse of discretion. Apaydin v. Cleveland Clinic Found. (1995),105 Ohio App.3d 149, 152.
 {¶ 38} The United States Supreme Court has repeatedly held in a wide variety of contexts that the right to be tried before a jury capable and willing to decide a case solely on the evidence before it is a cornerstone of our justice system. Cunningham v. St. Alexis HospitalMed. Ctr. (2001), 143 Ohio App.3d 353, 374, citing McIlwain v. UnitedStates (1983), 464 U.S. 972. In addition, the Ohio Supreme Court has noted that Section 5, Article I of the Ohio Constitution guarantees the right to a trial by a jury, and this right carries with it by necessary implication the right to trial by a jury composed of unbiased and unprejudiced jurors. Id. Similarly, this court has noted that "one touchstone of a fair trial is an impartial trier of fact — `a jury capable and willing to decide the case solely on the evidence before it.'" Id., quoting Apaydin, supra.
 {¶ 39} This trial judge did recognize the problem and did make an effort to determine the effect this prejudicial evidence had on the jury. However, under the facts of this case, we hold that the steps taken were inadequate to safeguard appellant's right to trial by an unbiased and unprejudiced jury willing to decide the case solely on the evidence presented to it. The record reflects that the trial judge questioned only one juror regarding whether the jury had considered the Face Sheet in its deliberations. Although that juror told the judge that the jury had not considered the Face Sheet, he also told the judge that other jurors had commented, after seeing the Face Sheet, that "this is his rap sheet" and "there was a history of domestic violence." In light of these comments — which strongly suggest the jury was, indeed, considering extraneous evidence — the trial judge should have voir dired each juror individually, outside the presence of other jurors, regarding his or her ability to impartially decide the case based solely on the evidence presented, despite the record of somewhat similar events contained in the Face Sheet. Because the trial judge failed to do so, it is impossible on this record to ascertain whether or not appellant's substantial rights were adversely affected by the inadvertent disclosure of the Face Sheet to the jury.
 {¶ 40} Appellant's third assignment of error is therefore sustained; appellant's conviction is reversed and the matter is remanded for a new trial.
 IV. {¶ 41} In his fourth assignment of error, appellant contends that the trial court erred in imposing consecutive sentences because it did not find, pursuant to R.C. 2929.14(E)(4), that consecutive sentences were: 1) necessary to protect the public from future crime or to punish the offender; 2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and 3) one of the following applied: a) the offender committed the offenses while awaiting trial or sentencing, under sanction or under post-release control; b) the harm caused by the multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offense; or c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime.
 {¶ 42} Contrary to appellant's argument, however, R.C. 2929.14(E)(4) is not applicable in this case because it applies to the imposition of consecutive sentences for felony offenses, not misdemeanors. As set forth in R.C. 2903.01, aggravated menacing is first-degree misdemeanor punishable by up to six months incarceration and a $1000 fine. Accordingly, R.C. 2929.22, regarding imposing sentence for misdemeanors, is applicable in this case.
 {¶ 43} R.C. 2929.22 provides that in determining whether to impose imprisonment or a fine, or both, for a misdemeanor, and in determining the amount of imprisonment and fine, the court shall consider:
 {¶ 44} "* * * the risk that the offender will commit another offense and the need for protecting the public from the risk; the nature and circumstances of the offense; the history, character, and condition of the offender and the offender's need for correctional or rehabilitative treatment; any statement made by the victim * * *; and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on the offender."
 {¶ 45} Our review of the record indicates that the trial judge considered these factors in imposing sentence. She noted that appellant had a long-standing criminal history dating back to 1987. She noted further that appellant had committed the offenses while on community control sanctions and that recidivism was likely. The trial judge also noted that the offenses were all against women and the victims, who had testified at trial, had suffered psychological trauma as a result of the offenses. Finally, the court noted that appellant did not demonstrate any remorse for the offenses but "has come up with numerous excuses as to why the letters were written."
 {¶ 46} On this record, we hold that the trial judge did not err in sentencing appellant to six months incarceration on each of the aggravated menacing misdemeanors.
 {¶ 47} Appellant's fourth assignment of error is therefore overruled. Reversed and remanded.
JAMES J. SWEENEY, J., concurs.
KENNETH A. ROCCO, P.J., dissents with separate dissenting opinion.