[Cite as *State v. Smith*, 2018-Ohio-4691.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27853 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-1289 |
| | : | |
| MARSHALL R. SMITH | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of November, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, P.O. Box 291771, 101 Southmoor Circle NW, Kettering, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Marshall R. Smith, appeals from the judgment of the Montgomery County Court of Common Pleas overruling his motions for a new trial after a jury found him guilty of felonious assault.   For the reasons outlined below, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 2} On June 21, 2017, the Montgomery County Grand Jury returned an indictment charging Smith with one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree.   The charges stemmed from allegations that Smith choked Laura Plummer at her Kettering residence, which caused Plummer to lose consciousness for several hours.   Smith pled not guilty to the felonious assault charge and the matter proceeded to a jury trial.

*Trial*

{¶ 3} At trial, Plummer testified that Smith was the longtime best friend of her former boyfriend, Norman Ferguson, and that she had known Smith for approximately two years.   According to Plummer, she and Smith were "just friends."   Tr. p. 117. Plummer testified that in April 2017, she agreed to let Smith stay at her apartment for a few days while she recuperated from a respiratory issue that required hospitalization. Plummer claimed that Smith took her home from the hospital and agreed to help around her apartment while she recovered.   During this time, Plummer's three-year-old daughter was staying with a babysitter.

{¶ 4} A few days after she was released from the hospital, Plummer decided that she wanted Smith to leave her apartment because she believed he was using drugs. Plummer testified that she asked Smith to leave on the morning of April 21, 2017. Although Smith was not happy about leaving, Plummer testified that Smith told her he would return after work to get his belongings. However, when Smith returned to Plummer's apartment that evening, Smith refused to leave.

{¶ 5} After Smith refused to leave, Plummer and Smith got into an argument. Plummer testified that, during the argument, she threatened to call the police if Smith did not leave. In response, Plummer testified that Smith told her he did not care about the police because he had already been to prison 11 times. Plummer then recalled Smith backing her into her daughter's bedroom and pushing her onto the bed. Plummer testified that after she fell on the bed, Smith sat on her chest and choked her with a pair of her daughter's pants.

{¶ 6} To no avail, Plummer attempted to push Smith off her chest. In discussing her attempts to push off Smith, Plummer noted that she had limited motion in her hand and arms due to suffering from compartment syndrome. Plummer also testified that she was unable to say "get off, or stop or no" during the incident because she was gasping for air. Tr. p. 141-142. Plummer claimed that she eventually lost consciousness and woke up several hours later.

{¶ 7} Continuing, Plummer testified that when she woke up, she was lying on the bed with her daughter's pants around her neck. Plummer also testified that Smith was no longer in the apartment. In describing her injuries, Plummer testified that she felt pain in her throat, neck, and eyes, and observed a severe bruise around her neck and broken

blood vessels in her eyes. Following the assessment of her injuries, Plummer contacted the police and reported the assault. Throughout trial, Plummer denied ever kissing or engaging in sexual relations with Smith.

{¶ 8} In his defense, Smith testified to a different version of events. Specifically, Smith testified that he choked Plummer with his work belt as the result of a consensual sexual encounter. Smith claimed that Plummer had told him she liked rough sex and wanted him to choke her for sexual gratification. Smith testified that, after he choked Plummer, he noticed a little redness on her neck and that Plummer told him he had pulled too hard on the belt. Smith testified that he left Plummer's apartment the following day after he and Plummer had an argument over $20.

{¶ 9} At the close of trial, the jury found Smith guilty of felonious assault.

*Motions for a New Trial*

{¶ 10} Prior to sentencing, Smith filed a Crim.R. 33 motion for new trial. In the motion, Smith claimed that his friend and Plummer's former boyfriend, Ferguson, approached his trial counsel while the jury was deliberating and advised his counsel that Plummer had lied when she testified to having no sexual relations with Smith. According to Smith, Ferguson advised his trial counsel that Plummer had previously told him that she could not recall whether she had engaged in sexual activity with Smith. Smith further claimed in his motion that, after the guilty verdict was read, his trial counsel approached the investigating detective, Vincent Mason, as well as the prosecutor, and informed them about what Ferguson had said regarding Plummer's testimony. Smith claimed that, in response, Detective Mason made a comment to Smith's trial counsel indicating that

Plummer had also told Mason that she could not recall whether she and Smith had engaged in sexual activity.

{¶ 11} Since Plummer affirmatively testified that she and Smith never had sex, Smith argued that a new trial was warranted under Crim.R. 33(A)(2) for prosecutorial misconduct if the prosecutor knew that Plummer had told Detective Mason that she could not recall if she and Smith had sex. Smith also argued that a new trial was warranted under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), due to exculpatory evidence being withheld from Smith in violation of his constitutional right to due process.

{¶ 12} Shortly after filing his Crim.R. 33 motion for new trial, Smith filed an amended motion for new trial that made the exact same claim for relief, but included an affidavit from Smith's trial counsel, Anthony Sullivan. In the affidavit, Sullivan averred that Ferguson had approached him during jury deliberations and advised him that Plummer had previously told him she could not recall whether she had sex with Smith. Sullivan also averred that, after the guilty verdict was read, he informed Detective Mason and the prosecutor about what Ferguson had told him, and that Detective Mason made a comment indicating that Plummer had also told him (Mason) that she could not recall if she had engaged in sexual activity with Smith.

{¶ 13} After filing the amended motion for new trial, Smith was appointed new trial counsel. Smith's newly appointed trial counsel then filed a second motion for new trial. In the second motion, Smith's trial counsel indicated that the State had just recently disclosed an audio recording of a telephone conversation between Detective Mason and Plummer. In light of the late disclosure, Smith once again moved for a new trial under

Crim.R. 33(A)(2) and *Brady*.

*Hearing on Motions for a New Trial*

{¶ 14} On December 15, 2017, the trial court held a hearing on Smith's motions for a new trial. At the hearing, Smith called Detective Mason to testify. Detective Mason testified that during his investigation, he spoke with Plummer one time over the telephone before he filed the felonious assault charge with the prosecutor. Mason testified that the telephone call with Plummer took place on April 25, 2017, and that the telephone call was audio-recorded due to Mason suffering from a hearing problem. Mason also testified that the recorded conversation with Plummer was downloaded and stored on his computer.

{¶ 15} In addition to recording the conversation, Mason testified that he took notes while speaking with Plummer. Mason further testified that when he records telephone conversations, he normally makes a special notation on his notes—a circled letter "R"—to indicate that the conversation was recorded. Mason, however, testified that he inadvertently failed to make that notation on the notes detailing his conversation with Plummer. Because he did not make the usual notation on his notes, Mason testified that he forgot about the recording. As a result, Mason failed to provide the recording to the prosecutor, who did not know about the recording until after trial. Following this testimony, the recording of Mason's conversation with Plummer was played for the trial court and admitted into evidence.

{¶ 16} After the recording was played for the trial court, Detective Mason testified about his post-verdict conversation with Smith's former trial counsel, Sullivan. Mason

testified that Sullivan approached him and the prosecutor about information Sullivan received from Plummer's former boyfriend, Ferguson. During this conversation, Mason testified that he jokingly made a comment about Plummer failing to remember having sex with Smith as a dig on Smith's sexual prowess. Mason testified that, in hindsight, the joke was in "poor taste" and that Plummer never told him that she did not recall having sexual relations with Smith. Tr. p. 247-248.

{¶ 17} Sullivan also testified at the hearing on Smith's motions. Sullivan testified that he issued a discovery demand to the State that requested several items, including but not limited to all recordings and exculpatory evidence. In response to the discovery demand, Sullivan testified that the State provided him with a written statement prepared by Plummer, a written summary report prepared by Detective Mason, a written report from Plummer's physician, an audio recording of Detective Mason's interview with Smith, and photographs of Plummer's residence and her alleged injuries. Sullivan testified that he never received nor was he made aware of the audio-recorded conversation between Detective Mason and Plummer until shortly before the hearing on Smith's motions.

{¶ 18} Sullivan also testified regarding his conversation with Ferguson. Sullivan testified that Ferguson approached him while the jury was deliberating and informed him that Plummer had lied when she testified to never having sex with Smith. Specifically, Sullivan testified that Ferguson advised him that Plummer had previously told him (Ferguson) that she could not recall whether she and Smith had sex on the night in question. Sullivan, however, admitted that he did not ask Ferguson whether Plummer's statements were made in the context of her not knowing whether Smith had sex with her after she fell unconscious from being choked by Smith. Sullivan also conceded that

Ferguson was not present during Plummer's trial testimony, as Sullivan testified that Ferguson was only present during closing arguments.

{¶ 19} In regard to his conversation with Detective Mason, Sullivan testified that he believed Mason was serious when he indicated that Plummer had told him (Mason) that she could not recall whether she had sex with Smith. Sullivan also testified that the undisclosed audio recording of Mason and Plummer's telephone conversation contained exculpatory information that he believed would have been relevant in preparing for trial.

{¶ 20} Following the hearing on Smith's motions for a new trial, the trial court took the matter under advisement and thereafter issued a written decision and entry overruling Smith's motions. In so holding, the trial court found Detective Mason's testimony credible. Specifically, the trial court found that Mason's post-verdict statement to Sullivan was a joke and that Plummer never told Mason that she could not recall whether she had sex with Smith. The trial court also concluded that any suggestion by Ferguson that Plummer had lied when she testified at trial was inadmissible, because Ferguson did not hear Plummer's testimony and could not give an opinion as to its truthfulness. The trial court further held that the failure to disclose the recorded conversation between Detective Mason and Plummer did not constitute a *Brady* violation, because the information contained on the recording was neither material nor exculpatory. After overruling Smith's motions for a new trial, the trial court sentenced Smith to serve a mandatory four-year prison term for the felonious assault.

{¶ 21} Smith now appeals from the trial court's decision overruling his motions for a new trial, raising one assignment of error for review.

## II. Assignment of Error

**{¶ 22}** Smith's sole assignment of error is as follows:

THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY DENYING APPELLANT'S MOTION FOR NEW TRIAL.

**{¶ 23}** Under his assignment of error, Smith claims the trial court erred in overruling his motions for a new trial. Specifically, Smith contends his motions should have been granted because the State failed to disclose the recorded conversation between Detective Mason and Plummer. According to Smith, the State's failure to disclose the audio recording constituted a violation of the United States Supreme Court's decision in *Brady,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, because the recording contained information that was both material and exculpatory. We disagree.

### *Standard of Review*

**{¶ 24}** Generally, "[a] reviewing court will not disturb a trial court's decision granting or denying a Crim.R. 33 motion for new trial absent an abuse of discretion." (Citation omitted.) *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 82. However, the Supreme Court of Ohio has indicated that a trial court's ruling on a motion for new trial claiming a *Brady* violation should be reviewed using "a due process analysis rather than an abuse of discretion test because the issue on review concern[s] [the defendant's] due process right to a fair trial, namely the suppression by the prosecution of evidence favorable to [the defendant]." *State v. Johnston*, 39 Ohio St.3d 48, 60, 529 N.E.2d 898 (1988). *Accord State v. Oldaker,* 4th Dist. Meigs No. 16CA3, 2017-Ohio-1201, ¶ 19; *State v. Webb*, 12th Dist. Clermont No. CA2014-01-013, 2014-Ohio-2894,

¶ 16; *State v. Keith*, 192 Ohio App.3d 231, 2011-Ohio-407, 948 N.E.2d 976, ¶ 41 (3d Dist.); *State v. Hoffman*, 11th Dist. Lake No. 2001-L-022, 2002-Ohio-6576, ¶ 19.

**{¶ 25}** Based on this precedent, we review de novo a trial court's ruling on a motion for new trial alleging a *Brady* violation, as the relevant inquiry is whether due process was violated by the prosecutor's failure to disclose evidence. *State v. Moore*, 3d Dist. Union No. 14-08-43, 2009-Ohio-2106, ¶ 19; *State v. Glover*, 2016-Ohio-2833, 64 N.E.3d 442, ¶ 35 (8th Dist.); *United States v. Bullock*, 130 Fed.Appx. 706, 722 (6th Cir.2005), citing *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir.1991) ("[t]he standard of review for the materiality of a purported *Brady* violation is *de novo* because it presents a mixed question of law and fact").

*Brady Analysis*

**{¶ 26}** Pursuant to the United States Supreme Court's decision in *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. Therefore, in order to establish a due process violation under *Brady*, the defendant must demonstrate that: "(1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defendant; and (3) the evidence was material." *State v. Goney*, 2d Dist. Greene No. 2017-CA-43, 2018-Ohio-2115, ¶ 66; *Moore v. Illinois*, 408 U.S. 786, 794-795, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

**{¶ 27}** Because exculpatory and impeachment evidence are favorable to the

defendant, both types of evidence may be the subject of a *Brady* violation, so long as the evidence is material. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "Evidence is considered material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *State v. Royster*, 2d Dist. Montgomery No. 26378, 2015-Ohio-625, ¶ 16, quoting *Bagley* at 682. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Bagley* at 682.

**{¶ 28}** "As a rule, undisclosed evidence is not material simply because it may have helped the defendant to prepare for trial." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 49. "The United States Supreme Court has rejected a standard of materiality that focuses 'on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, rather than the materiality of the evidence to the issue of guilt or innocence.' " *Id.*, quoting *United States v. Agurs*, 427 U.S. 97, 112-113, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), fn. 20.

**{¶ 29}** Furthermore, no *Brady* violation occurs when the undisclosed evidence is cumulative to evidence already known by the defense at the time of trial. *See State v. Cook*, 1st Dist. Hamilton No. C-950090, 1995 WL 763671, *3 (Dec. 29, 1995). There is also no *Brady* violation "if the evidence that was allegedly withheld is merely cumulative to evidence presented at trial." (Citations omitted.) *State v. Bonilla*, 2d Dist. Greene No. 2008 CA 68, 2009-Ohio-4784, ¶ 26.

**{¶ 30}** In this case, there is no dispute that the recording of the conversation between Detective Mason and Plummer was not disclosed by the State until after Smith's trial concluded. However, after reviewing the recording in question, this court finds that

a majority of the information on the recording was cumulative to information already known by Smith prior to trial. This is because a majority of the information on the recording was also contained in the summary report prepared by Detective Mason and in Plummer's written statement, both of which were disclosed to Smith during discovery.

{¶ 31} Nevertheless, there was some information on the recording that was not contained in either Detective Mason's report or Plummer's written statement. Upon review, this court finds that such information was not favorable to Smith and/or not material. The information in question was as follows:

- Plummer's former boyfriend, Ferguson, told her that Smith's "thing" was choking people and that Smith had even choked Ferguson before.

- Plummer believed that Smith was doing drugs not only because Plummer had money missing (which was indicated in Mason's report and Plummer's written statement), but also because Smith was acting funny, being secretive, and going into other rooms of her apartment and staying there for long periods of time. Plummer also indicated that a friend saw Smith "get something."

- Plummer's eyes were yellow with blood in them after Smith choked her.

- Plummer was on a respirator in the hospital due to breathing problems.

- Smith wanted to kiss Plummer and tried to have sex with Plummer, but they were never naked around each other and Plummer never

wanted that kind of relationship with Smith.

- Plummer had drug problems in the past.

- Ferguson had been Smith's friend for 35 years.

- Plummer had a protection order against Ferguson.

- Despite having a protection order against Ferguson, Plummer contacted Ferguson and told him about Smith choking her, which upset Ferguson.

- Ferguson told Plummer that he had gotten on Smith's Facebook page "and wrote a bunch of stuff," which scared Plummer because it alerted Smith to the fact that she had called the police.

- Ferguson had not been "hanging around" Smith.

**{¶ 32}** Plummer's statements concerning Smith's suspected drug use and Ferguson's report of Smith's tendency to choke others were clearly unfavorable to Smith in that they lended credibility to Plummer's version of events and did nothing more than weaken Smith's credibility.

**{¶ 33}** Plummer's statement regarding her yellow, bloodshot eyes was also unfavorable to Smith because it was consistent with the photographs of Plummer's injuries which were disclosed to Smith during discovery.   Likewise, Plummer's statement that she was on a respirator due to breathing problems was unfavorable to Smith because it contradicted Smith's claim that Plummer wanted to be choked (and ultimately deprived of air) for sexual gratification.   Instead, Plummer's claimed breathing problem and need for a respirator supported her assertion that the choking incident was not consensual.

**{¶ 34}** Plummer's statements indicating that she never kissed Smith, was never

nude around Smith, and never wanted a sexual relationship with Smith were consistent with her trial testimony and were clearly unfavorable to Smith's consensual sexual encounter defense. Specifically, these statements supported Plummer's claim that she never had sex with Smith, a claim that was present in Detective Mason's summary report.

{¶ 35} Despite this, Smith argues that Plummer could be heard hesitating on the recording when Detective Mason asked her whether she had a sexual relationship with Smith. Smith argues that said hesitation was favorable evidence that could have been used to attack Plummer's credibility. After reviewing the portion of the recording in question, this court finds that Plummer merely said the word "um" and briefly paused before answering Detective Mason's question. Contrary to Smith's claim otherwise, nothing in the nature or timing of Plummer's response would make one question its veracity.

{¶ 36} The remainder of the non-cumulative information on the recording concerned Plummer's prior drug problem and her former boyfriend, Ferguson. The fact that Plummer had a prior drug problem would have been inadmissible at trial because it was extrinsic to the felonious assault and was not clearly probative of Plummer's truthfulness or untruthfulness. *See* Evid.R. 608(B). Because Plummer's prior drug problem was inadmissible, it would not have affected the outcome of trial, and thus did not constitute material evidence.

{¶ 37} Finally, the information regarding Plummer's former boyfriend, Ferguson, was also immaterial evidence, as it had nothing to do with the felonious assault in question and would not have impacted the jury's guilty verdict. We further note that Plummer's written statement referred to Ferguson by name, and thus put the defense on notice of

Ferguson's relationship to the parties. The defense, therefore, was free to locate and question Ferguson prior to trial.

{¶ 38} Smith nevertheless argues that the information on the audio recording was favorable and material because it could have been used to impeach Detective Mason's and Plummer's trial testimony. This claim fails for multiple reasons. With regard to Plummer, the only information on the audio recording that was inconsistent with Plummer's trial testimony was a statement that Plummer made to Mason indicating that she told Smith several times to stop choking her. During trial, Plummer testified that she was unable to tell Smith to stop choking her because she was gasping for air. Plummer's inconsistent statement in the audio recording, however, was included in Detective Mason's supplemental report. Therefore, Smith was aware of the inconsistency prior to trial and could have impeached Plummer using the detective's report.

{¶ 39} As for Detective Mason, the only inconsistency in Mason's trial testimony and the audio recording was unfavorable to Smith. Specifically, Mason testified and wrote in his report that Plummer told him she and Smith kissed each other one time in the past. That statement, however, was not supported by the audio recording, as Plummer merely told Mason that Smith "wanted to kiss [her] and stuff." During the recorded conversation, Plummer never stated that she and Smith had kissed. This information did not favor Smith in any way, but instead supported Plummer's claim that she and Smith were just friends.

{¶ 40} For the foregoing reasons, we do not find that the State's inadvertent failure to disclose the recorded conversation between Detective Mason and Plummer constituted a *Brady* violation, as the information on the audio recording was cumulative to information

already known by the defense prior to trial and/or did not constitute favorable, material evidence that would have affected the outcome of trial.

{¶ 41} Smith's assignment of error is overruled.

## III. Conclusion

{¶ 42} Having overruled Smith's sole assignment of error, the judgment of the trial court overruling Smith's motions for a new trial is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
J. David Turner
Hon. Mary Katherine Huffman