**[Cite as *State v. Graf*, 2022-Ohio-2169.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29202 |
| | : | |
| v. | : | Trial Court Case No. 2021-CRB-1933 |
| | : | |
| ELIZABETH A. GRAF | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 24th day of June, 2022.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 and ANDREW D. SEXTON, Atty. Reg. No. 0070892, Assistant City of Dayton Prosecuting Attorneys, 335 West Third Street, Room 119, Dayton, Ohio 45402
     Attorneys for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Elizabeth A. Graf appeals from her conviction of aggravated menacing following a bench trial on charges of aggravated menacing and menacing.

{¶ 2} Graf contends the trial court erred in denying her a new trial after relying on information outside the record to assess her credibility and find her guilty.

{¶ 3} We conclude that the trial court improperly found Graf's trial testimony not credible based on its observation of her out of court on prior occasions. The trial court erred in relying on these other incidents to assess her credibility. The error violated Graf's due-process right to a fair trial. Accordingly, the trial court's judgment will be reversed, and the case will be remanded for a new trial.

## I. Factual and Procedural Background

{¶ 4} Graf was charged by complaint with aggravated menacing, a first-degree misdemeanor, and menacing, a fourth-degree misdemeanor. The charges involved her allegedly making threats to the victim, Luanna Burt. The case proceeded to a June 22, 2021 bench trial. The first witness at trial was Burt. She testified that she was home sitting at a table in her fenced yard on the evening of June 6, 2021, when she heard her dog barking. Burt looked up and saw her dog at her fence line. On the other side of the chain-link fence Burt saw Graf walking her own dog. Graf and her dog were just outside the fence but in Burt's yard. Graf appeared to be trying to provoke her dog to attack Burt's dog. Burt approached and asked Graf to walk her dog on the other side of the street where there was a sidewalk. According to Burt, Graf responded with a barrage of obscenities and racial slurs. Graf also unleashed her dog and sought to coax it into attacking Burt. According to Burt, Graf then pulled a knife, pointed it at her, and threatened

to kill her. Burt retreated to call the police. Graf left the scene but returned minutes later in a car. Burt testified that Graf circled the block a few times and pulled up onto Burt's property before finally leaving.

{¶ 5} The prosecution's next witness was Burt's boyfriend, Jerome Arnold. He testified that he was approaching Burt's house on foot when he heard yelling. As he got closer, he saw Graf and her dog near Burt's chain-link fence. Arnold spoke to Graf and tried to get her to continue on her way. He testified that she responded by directing obscenities and racial slurs at him. Arnold decided to go inside Burt's house. As he started to do so, he saw Graf brandish a knife. He also heard her threaten to "gut" Burt. According to Arnold, Graf left but returned minutes later in a car. She pulled up over the curb in the grass while honking her horn and yelling.

{¶ 6} The final prosecution witness was Roy Barber, a neighbor. Barber testified that he lived two doors down from Burt. He went outside on his front porch after hearing "loud mouth cussing." He recalled seeing Graf and her dog across the street on a sidewalk where Graf was yelling obscenities and racial slurs at Burt. At one point, Barber saw Graf unleash her dog and shake the leash at Burt. Although Barber did not see Graf with a knife, he heard Burt say "oh, she's got a weapon." According to Barber, Burt then went inside her house and Graf left with her own dog. Barber testified Graf returned minutes later in a car, honking her horn and screaming. On cross-examination, Barber stated that he did not see Burt's dog outside. He also reiterated that he saw Graf and her dog across the street on a sidewalk, where they remained throughout his observation. Following Barber's testimony, the prosecution rested.

{¶ 7} Graf then testified in her own defense. She explained that she was walking her dog, a "rescue lab," on the sidewalk near Burt's property. As she did so, Burt's dog became excited and started barking. According to Graf, Burt responded by yelling at her and "running out of the fence." Graf testified that she was scared, that she asked to be left alone, and that she tried to continue on her walk. Graf denied threatening Burt in any way and specifically denied threatening to kill or "gut" her. Graf denied even possessing a knife during the incident. She also testified that she did not have a knife in her possession when police arrested her later that evening. On cross-examination, Graf denied raising her voice at Burt, calling Burt any names, unleashing her dog, or returning in a car.

{¶ 8} After hearing arguments from counsel, the trial court ruled from the bench and found Graf guilty of aggravated menacing and menacing. In support, the trial court reasoned:

> * * * I do find the testimony of the three witnesses to be credible. I do not find the defendant's testimony to be credible in this case. I will note that this court, myself, I have experienced Ms. Graf, out here at our warrant enforcement window with extremely erratic and unexplainable behavior, so I know there is some components there. I know she is prone to that. I know we've had at least two or three incidents with her on cases that she did not have and that did not exist, but she was here yelling at our warrant enforcement office. And I've had to ask her myself, multiple times, to leave the building. So, I know Ms. Graf is capable of that type of behavior. So, I

do find the State has met its burden in proving guilty beyond a reasonable doubt. Will enter findings of guilty as to both charges. * * *

Trial Tr. at 60-61.

{¶ 9} Prior to sentencing, Graf moved for a new trial under Crim.R. 33 and for voluntary recusal of the judge who presided over her trial. The trial court heard arguments on the motion on July 8, 2021. Graf's motion was predicated on the trial court's resolving witness credibility based on its out-of-court prior interactions with her. Graf claimed that the trial court's remarks revealed an improper bias against her testimony. The trial court rejected Graf's argument, insisting that its credibility determination was based solely on the testimony presented. In support of its ruling, the trial court stated:

Ok. The court, as we do with every jury and as I've made every effort to in my fifteen years on the bench, decided this case solely on the evidence presented here in this courtroom. Although the court did have prior interactions with Ms. Graf, the court did not use any of those interactions to weigh her credibility here in court. None of those prior actions had anything to do with credibility or her credibility or testing her credibility here in court. The court—all of the judges in this court have situations where we've had defendants in front of them for prior cases. We've made decisions on their cases in prior cases. We must lay all of that aside when hearing new cases. We hear these cases based upon the evidence solely presented during the case. That is what I did in this case. * * *

July 8, 2021 Tr. at 14.

{¶ 10} The trial court proceeded to set forth a rationale, based on the trial testimony

presented, for finding the State's witnesses to be more credible than Graf. *Id.* at 15-16. The trial court then insisted again that its verdict was based exclusively on the evidence presented, stating:

> * * * Everything in this case was decided solely on the testimony presented in court. The evidence presented in court. That is where the issues of credibility came up. None of the other issues were factored in with regards to the determination of the defendant's guilt in this case. Having only seeing [sic] Ms. Graf on one or two occasions for literally seconds, I don't know her. I have no ill will towards her. She doesn't live in my neighborhood. She is just another defendant in this court. So I am going to overrule the motion at this point and maintain the guilty finding in this case. And then deny the motion for voluntary recusal, as well. * * *

*Id.* at 16-17.

{¶ 11} The trial court later merged aggravated menacing and menacing as allied offenses of similar import for sentencing. The prosecution elected to proceed on aggravated menacing. The trial court imposed a partially-suspended jail term and ordered Graf to serve two years of supervised probation. It also imposed a fine and ordered Graf to pay court costs. Finally, the trial court overruled Graf's motion to stay execution of sentence pending appeal.[1]

## II. Analysis

---

[1] Graf's act of seeking a stay of execution in the trial court precludes any possible argument about her appeal being moot. *Cleveland Heights v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, ¶ 24-26.

{¶ 12} In her sole assignment of error, Graf challenges the trial court's denial of her new-trial motion. She notes that the trial court explicitly referenced its own prior experiences with her when resolving the conflicting evidence and finding her guilty. She argues that the trial court allowed its prior knowledge of her to contaminate the proceeding and to create at least an appearance of improper bias or partiality.

{¶ 13} For its part, the State contends the trial court's challenged comments do not warrant a new trial. The State argues that the testimony of its witnesses established the elements of the charged offenses. The State also cites the trial court's assertion at the post-trial hearing that its verdict was based solely on the evidence presented. Finally, the State claims there is no reasonable probability that the outcome would have been different but for the trial court's remarks about Graf's prior behavior.

{¶ 14} Typically, we review a trial court's ruling on a Crim.R. 33 new-trial motion for an abuse of discretion. *State v. Russell*, 2d Dist. Clark No. 2020-CA-17, 2021-Ohio-4106, ¶ 29. However, when the motion alleges a violation of a defendant's due-process right to a fair trial, de novo review applies. This is so because whether a constitutional due-process violation exists involves a legal question. *State v. Bentz*, 2017-Ohio-5483, 93 N.E.3d 358, ¶ 134-135 (3d Dist.); *see also State v. Smith*, 2d Dist. Montgomery No. 27853, 2018-Ohio-4691, ¶ 24-25 (applying de novo review to denial of new-trial motion alleging a due-process violation based on the prosecution's suppression of evidence favorable to the accused); *State v. Johnson*, 1st Dist. Hamilton No. C-990482, 2000 WL 1714213, *6 (Nov. 17, 2000) ("If the ruling on the [new-trial] motion requires the exercise of discretion, e.g., what was done or not done, said or not said, * * * then a trial court will

be reversed only upon a showing of abuse of that discretion. * * * Where the resolution of the issues within a motion for a new trial does not involve discretion, the trial court's decision must be shown to be erroneous as a matter of law.").[2]

{¶ 15} "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34, citing *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). Judicial bias has been characterized as " 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.' " *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶ 16} "If the record evidence indicates that the trial was infected by judicial bias, the remedy is a new trial." *State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, 73 N.E.3d 414, ¶ 43, citing *Dean* at ¶ 2. "In determining whether purported judicial bias resulted in a due process violation, we presume that a judge is unbiased and unprejudiced in the matters over which he or she presides, and the appearance of bias or prejudice must be compelling in order to overcome the presumption." (Citations omitted.) *Cleveland v. Goodman,* 8th Dist. Cuyahoga Nos. 108120, 108678, 2020-Ohio-2713, ¶ 18.

---

[2] Parenthetically, we note that we would reach the same conclusion based on our analysis herein even if we were to apply abuse-of-discretion review to the trial court's denial of Graf's new-trial motion.

{¶ 17} Judicial bias does not necessarily arise when a judge forms an opinion based on facts or events occurring in a prior judicial proceeding. The issue is whether the prior opinion results in a "deep-seated" antagonism that makes a fair judgment impossible. *Dean* at ¶ 49, citing *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, L.Ed.2d 474 (1994). Likewise, a judge's remarks critical or disapproving of a party do not necessarily establish bias or partiality. However, such remarks may support a bias or partially charge "if they reveal an opinion that derives from an extrajudicial source," and they will support a challenge if they reveal a degree of antagonism that makes a fair judgment impossible. *Id.*

{¶ 18} Even if a judge holds a negative opinion about a litigant, "[j]udges are expected to be able to keep their prior opinions from intruding on their duties to fairly and impartially decide each case." *In re Disqualification of Vercillo*, 137 Ohio St.3d 1237, 2013-Ohio-5763, 1 N.E.3d 414, ¶ 5. In other words, " 'a judge is presumed to be capable of separating what may properly be considered from what may not be considered.' " *Id.*, quoting *In re Disqualification of Basinger*, 135 Ohio St.3d 1293, 2013-Ohio-1613, 987 N.E.2d 687, ¶ 5.

{¶ 19} The problem in the present case is that the trial court's challenged remarks establish that it based its assessment of Graf's credibility on the judge's prior interaction with her outside of the courtroom. Indeed, the trial court explicitly linked its credibility determination to the judge's prior experiences with her. The trial court cited its prior out-of-court observations of Graf engaging in "extremely erratic and unexplainable behavior" and professed its knowledge that "she is prone to that." After citing specific examples of

Graf engaging in erratic behavior, the trial court concluded: "So, I know Ms. Graf is capable of that type of behavior. So, I do find the State has met its burden in proving guilty beyond a reasonable doubt." Trial Tr. at 60-61.

{¶ 20} In our view, the trial court erred in assessing the credibility of Graf's testimony based at least in part on its prior out-of-court observations and experiences with her. The trial court's remarks demonstrate that it did not set aside any preconceived opinions or views regarding Graf. To the contrary, it cited and relied on its prior observations and interactions with her as a basis for finding her testimony not credible. Under these circumstances, we are compelled to find a violation of Graf's due-process right to a fair trial. Credibility determinations must be made impartially based on the testimony and other evidence presented, not based on a fact-finder's prior out-of-court interactions with a defendant. This is particularly true in the present case, which essentially involved weighing Graf's testimony against the testimony of Burt and Arnold, the only two witnesses who claimed to have seen her threaten Burt with a knife.

{¶ 21} Although the trial court denied during the post-trial hearing that it relied on its prior interactions with Graf to weigh her credibility, this denial is belied by the trial court's own remarks at the conclusion of her trial. The trial court also insisted at the hearing that it did set aside its prior knowledge about Graf when deciding the case. But, again, the trial court's comments at the conclusion of trial are at odds with this assertion. Because the trial court's denial of partiality or bias is controverted by the trial transcript, we conclude that Graf has overcome the presumption of impartiality with regard to the

trial court's assessment of her credibility.[3]

{¶ 22} In reaching our decision, we reject the State's passing assertion that there is no reasonable probability the outcome would have been different but for the trial court's "innocuous statements." Graf properly raised the issue of judicial bias and sought a new trial under Crim.R. 33. The record persuades us that the trial court's statements were not innocuous. Rather, the trial court explicitly weighed the competing testimony and evaluated credibility based on its prior out-of-court interactions with Graf. Therefore, Graf established grounds for relief based on a due-process violation of her right to a fair trial. The only way to find no reasonable probability that the outcome would not have been different if the trial court had not improperly assessed credibility would be for us to weigh the competing testimony ourselves, to make our own credibility assessments, and to declare the prosecution witnesses credible. But witness credibility primarily is a matter for the trier of fact to resolve, and we give substantial deference to the fact-finder's determination. *Buckeye Retirement Co., LLC, Ltd. v. Busch*, 2017-Ohio-4009, 82 N.E.3d 66, ¶ 106 (2d Dist.).

{¶ 23} We note too that the evidence was not overwhelming or undisputed enough to find no reasonable probability of a different outcome if the trial court properly had evaluated witness credibility. To be sure, portions of Graf's testimony were questionable. She denied raising her voice, calling Burt any names, or returning to Burt's house in her

---

[3] Although a court of appeals has no authority to hear a disqualification matter or to declare a trial court's judgment void on the basis of judicial bias, we note that "a trial court's judgment may be reversed due to bias if the bias or prejudice violated the defendant's right to due process and deprived the defendant of a fair hearing. *Goodman,* 8th Dist. Cuyahoga Nos. 108120, 108678, 2020-Ohio-2713, at ¶ 15-16.

car. According to Graf, she did nothing objectionable and simply attempted to walk her dog past Burt's house. On the other hand, portions of the testimony from Burt and Arnold also reasonably could be questioned. Burt and Arnold both claimed that Graf was in Burt's yard near the chain-link fence. But Burt's neighbor, Roy Barber, testified that Graf remained across the street on a sidewalk. On the crucial issue of whether Graf threatened Burt with a knife, which seems to be the basis of the misdemeanor charges, Graf testified that she did not have a knife in her possession at the time of the incident or later when she was arrested. Conversely, Burt and Arnold testified that Graf did brandish a knife. Barber, the most objectively-neutral witness, testified that he did not see Graf in possession of a knife. Whether Graf would have been found guilty of aggravated menacing and menacing if the trial court had made its credibility determinations impartially based solely on the testimony presented in court is at least questionable.

{¶ 24} In any event, we note that "[t]he presence of a biased judge on the bench is, of course, a paradigmatic example of structural constitutional error, which if shown requires reversal without resort to harmless-error analysis." *State v. Sanders*, 92 Ohio St. 3d 245, 278, 750 N.E.2d 90 (2001), citing *Arizona v. Fulminante*, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *see also State v. Stafford*, 158 Ohio App. 3d 509, 2004-Ohio-3893, 817 N.E.2d 411, ¶ 58 (1st Dist.) ("A biased trial court is a structural constitutional error and, if shown, requires reversal without resorting to a harmless-error analysis."). At least when an objection has been raised in the trial court, structural error "is grounds for automatic reversal." *State v. West*, Ohio Slip Opinion No. 2022-Ohio-1556, __ N.E.3d __, ¶ 2.

{¶ 25} Here Graf did not object to the trial court's comments during trial. She could not do so given that the challenged credibility assessment came after trial when the trial court was announcing its rationale for a guilty verdict. We fail to see how Graf meaningfully could have objected to the trial court's explaining the basis for its decision. The trial court already had made its credibility determination, and Graf realistically could not ask it to form a different opinion about her and become unbiased. By expressing the views that it did, the trial court overtly demonstrated that it was incapable of setting aside its preconceptions about Graf. Therefore, she pursued the best option available to her: while still in the trial court, she moved for a new trial after the verdict and before sentencing.

{¶ 26} Under these circumstances, we believe Graf preserved the issue of structural error in the form of judicial bias, meaning that reversal would be automatic notwithstanding the language of Crim.R. 33 providing for relief when an error materially affects a defendant's substantial rights. As the Ohio Supreme Court recognized in *Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, where a defendant does not receive a fair trial from an impartial judge, "the remedy is a new trial." *Id.* at ¶ 2. In essence, the trial court's violation of Graf's due-process right to a fair trial necessarily affected her substantial rights. For each of the foregoing reasons, Graf's assignment of error is sustained.

## III. Conclusion

{¶ 27} Having sustained Graf's assignment of error, we reverse the judgment of the Dayton Municipal Court, Criminal Division, and remand the case for a new trial.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Stephanie L. Cook
Andrew D. Sexton
Robert Alan Brenner
Hon. Christopher D. Roberts