**[Cite as *State v. Fultz*, 2022-Ohio-4177.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29434 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-1578 |
| | : | |
| ALEX J. FULTZ | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of November, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

KAREN B. GROSETH, Atty. Reg. No. 0090201, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1}  Defendant-Appellant Alex J. Fultz appeals from a judgment of the trial court denying his motion for a new trial pursuant to Crim.R. 33(A)(2).   For the reasons that follow, the judgment of the trial court is reversed, and the matter is remanded for a new trial.

## I.      Facts and Procedural History

{¶ 2} In the early morning hours of March 24, 2021, Nouh Ibrahim woke up to find his 2014 SRT8 Dodge Charger in flames. Dayton police and fire departments responded to the scene and eventually extinguished the fire. After the first responders left, Fultz arrived at Ibrahim's house on a bicycle and asked, "Did someone set your car on fire?" Trial Tr. at 42. Ibrahim testified that the two men were acquainted with each other from their days at Belmont High School, but that this particular interaction was "weird" because Fultz was very talkative. Ibrahim explained that it was strange "[b]ecause we don't talk like that. That's just not our relationship. It was kind of just, 'hey, how you doing,' every once in a while." Trial Tr. at 43. Ibrahim testified that Fultz told him he was heading to his (Fultz's) girlfriend's house.

{¶ 3} Ibrahim reviewed surveillance footage from his house that showed a person light an object on fire before setting the vehicle ablaze. Based on the person's physical appearance and gait, he believed that the man seen in the video setting the fire was Fultz.

{¶ 4} Fultz was eventually arrested and charged with arson and criminal damaging. The case proceeded to trial on November 4, 2021, where the State presented three

witnesses: a Dayton police officer who responded to the scene, Ibrahim, and Dayton fire investigator Nicholas Scowden, who testified that the fire was set by an incendiary device similar to a Molotov cocktail.

{¶ 5} Fultz testified on his own behalf and stated that, although he was in the surveillance video from Ibrahim's property, he had not been involved in setting the fire. He also told the jury that he was often in the neighborhood visiting his girlfriend.

{¶ 6} Both parties rested, and during the first day of deliberations, the jurors sent questions to the court requesting a map of the area and asking about the relative locations between Fultz's girlfriend's house, Ibrahim's house, and Fultz's mother's house. The court denied the request for the map, advising that there was no map to view because none was used during trial or admitted into evidence. The court allowed the jury to review Fultz's testimony in the courtroom. After further deliberation, Fultz was found guilty as charged.

{¶ 7} Shortly after the trial, the court was contacted by Juror #8, who stated that another juror had looked at outside information and had disseminated what she had learned to the panel during deliberations. Based on this information, Fultz filed a motion for a new trial. On December 7, 2021, the trial court held a hearing to question Juror #8. The juror told the court:

> [W]hen you sent us home after the first day you instructed us not to do any
> research, * * * not to look at maps, not to drive through the neighborhood.
> And I think most of us did that, but one juror did not. And she came in and,
> as we were deliberating, started to tell people, "Well, I looked at these maps

last night and, you know, this is – this is where the girlfriend lived, and this is where the car was, and this is where Alex's house was." Trial. Tr. at 201. Juror #8 was adamant that her verdict had been based only on the evidence presented at trial but was concerned that the outside information could have influenced other jurors. She stated that after the noncompliant juror discussed the information she had learned from her own research, a vote was taken, and several jurors had changed their minds.

{¶ 8} A second evidentiary hearing was held on January 21, 2022, during which the court and attorneys questioned the other eleven jurors. Several testified that a female juror seemed to be familiar with the area surrounding Ibrahim's house: some stated that the rogue juror had admitted to looking at maps, two did not hear any discussions of outside investigations at all, one noted that the female juror had had a phone out during deliberations, and another testified that the juror in question had told the group that she was familiar with the area because she worked there. All of these jurors were adamant that the outside information had had no bearing on their verdict.

{¶ 9} Juror #1, however, recounted that he had overheard a female juror say that she looked at a map of the area on Google. He admitted that he "probably took [the information] into consideration" but insisted that his final decision to find Fultz guilty had been based on the evidence presented at trial. Trial Tr. at 264-265.

{¶ 10} Following the hearings, the trial court overruled Fultz's motion. It reasoned that while there had been juror misconduct, a new trial was not necessary because the misconduct had not materially affected Fultz's substantial rights.

**{¶ 11}** Fultz now appeals that judgment, raising one assignment of error:

FULTZ'S MOTION FOR A NEW TRIAL SHOULD HAVE BEEN GRANTED, AND SINCE HE WAS PREJUDICED DUE TO JUROR MISCONDUCT, HIS CONVICTION SHOULD BE VACATED AND A NEW TRIAL GRANTED.

## II.    Juror Misconduct

**{¶ 12}**    The United States Supreme Court has repeatedly emphasized that "the right to be tried before a jury capable and willing to decide a case solely on the evidence before it is a cornerstone of our criminal justice system."  *McIlwain v. United States,* 464 U.S. 972, 974-975, 104 S.Ct. 409, 78 L.Ed.2d 349 (1983).

**{¶ 13}** Crim.R. 33(A)(2) states that a new trial may be granted on motion of the defendant based on jury misconduct if it materially affected the defendant's substantial rights. "In reviewing circumstances suggesting juror misconduct, we must employ a two-tier analysis: (1) determine whether there was juror misconduct and (2) if juror misconduct is found, determine whether it materially affected the defendant's substantial rights." *State v. Hopfer*, 112 Ohio App.3d 521, 543, 679 N.E.2d 321 (2d Dist.1996).  It is well established that "the party complaining about juror misconduct must establish prejudice." *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 42.

**{¶ 14}** If juror misconduct in the form of an independent investigation is uncovered, the court is required to inquire of each juror to determine if he or she remained impartial after the independent investigation. *State v. Fowler*, 2d Dist. Clark No. 2015-CA-95, 2016-Ohio-5867, ¶ 9. The trial court is in the best position to resolve questions of facts and

determine witness credibility; therefore, we review the trial court's ruling on a motion for a new trial pursuant to Crim.R. 33 for an abuse of discretion. *See State v. McGail*, 2021-Ohio-231, 167 N.E.3d 70, ¶ 92 (2d Dist.); *State v. Graf*, 2022-Ohio-2169, 191 N.E.3d 539, ¶ 14 (2d Dist.).

**{¶ 15}** As this Court has noted:

> * * * "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. Most instances of abuse of discretion occur when a trial court makes a decision that is unreasonable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

*State v. Muhire*, 2d Dist. Montgomery No. 29164, 2022-Ohio-3078, ¶ 22.

**{¶ 16}** The record developed herein unquestionably establishes there was a taint upon the verdict. Both parties and the trial court agreed that there was juror misconduct in this case. "Any independent inquiry by a juror about the evidence or the law violates the juror's duty to limit his [or her] considerations to evidence, arguments, and law presented in open court, and such activity is juror misconduct." *State v. Gunnell*, 2d Dist. Clark No. 2009-CA-0013, 2010-Ohio-4415, ¶ 76.

**{¶ 17}** We must look at the misconduct in the context in which it occurred. This was a circumstantial case. The defendant's assertion that he was merely in the area of

the arson as he traversed between his home and that of his girlfriend was a critical aspect of his defense/credibility.

{¶ 18} Significantly, the location/map of the area was not a trivial matter in the jurors' minds, as at least two of the questions sent to the judge during deliberations established. These questions were addressed in chambers as follows:

THE COURT: Okay. We're on the record. It is approximately 10:44 a.m. and we received a question from the jury. And the question is, "Can the jury see a map of the area?" The State has a response – has a position on the response to this question?

[PROSECUTOR] MR. MYERS: No map was provided in evidence, so I believe the correct answer would be that, no, they have to rely on the evidence as presented.

[DEFENSE COUNSEL] MR. FRICKER: And I would agree, like since there was no map introduced into evidence for anyone to review, that they have to rely on the evidence that's been admitted and presented.

THE COURT: Okay. That will be the response that the Court gives that no, they can't see a map of the area, that they will have to rely on the evidence admitted. Okay?

Off the record.

(End of in chambers)

(Recess taken)

* * *

THE COURT:   Okay, we're back on the record. It's 11:00 a.m. and we have another question from the jury. The question is, "Can the jury have the transcripts talking about relative locations between girlfriend's house, Nouh's house, and Alex's mom's house?"

Obviously there are no transcripts that are available. We talked about this off the record and I believe the consensus is the response should be no, there are not transcripts, but if you – you do have the availability to relisten to the audio testimony of certain witnesses.

[PROSECUTOR] MS. JAGIELSKI:        In its entirety.

THE COURT:        In its entirety.

MR. MYERS:        In the courtroom.

MS. JAGIELSKI:      And I think it's the requirement, correct, that you have to listen to the testimony in its entirety.

THE COURT:   I don't know that for sure, but I think that makes sense. I think that that – that's what I would tell them, that they have to listen to it in its entirety. Because it's not a limited section of the testimony where that – where the area was discussed. I think that –

MR. MYERS:  So they would have to tell us which particular witness or witnesses they would want to review.

THE COURT: And they would have to review that witness's testimony in its entirety.

MR. MYERS:  Yes.

MS. JAGIELSKI:   In the courtroom.

THE COURT:   In the courtroom.

Okay. So we can work out – but I think we are all in agreement of what the answer should be. We can work out the exact wording of that answer off the record. All right.

* * *

(In chambers)

THE COURT: Okay, we're back on the record. It is 11:38 a.m. We have a third question from the jury. "Can the jury view Alex's testimony?" We got this question just a little bit ago and Alex – Alex Fultz's testimony is being burned onto a disk for the jury to view. Parties agree that we're going to allow them to view the testimony in the courtroom in its entirety. Is that accurate?

On behalf of the State?

MS. JAGIELSKI:   Yes, Your Honor.

THE COURT:   On behalf of the Defense?

MR. FRICKER:   Yes, Your Honor.

THE COURT:   Okay, so we will answer yes to this question, and this will be marked as Court's Exhibit 5.

(End in chambers)

(Recess taken)

{¶ 19} Obviously, these questions established two things.   First, the jury wanted

a map of the area in question, and the judge specifically advised the jury "No." Second, the follow up questions sought review of testimony including Fultz's testimony about relative locations between Fultz's girlfriend's house, Ibrahim's house, and Fultz's mom's house. Clearly maps, locations, and distances were part of the jury's calculus and related to the very misconduct that was unequivocally established. According to at least one juror, a map was used to "discredit" Fultz's testimony. This juror was concerned enough to initially report the misconduct and access to extraneous information, which five other jurors then acknowledged had occurred. A fair trial was no longer possible.

{¶ 20} A jury trial is a priceless right. We must give more than lip service to a fair and impartial jury. Only one juror may be the difference between liberty and imprisonment. Here, there were at least two jurors that called into question the validity of the verdict. We know with certainty that one female juror had been untruthful under oath about her commission of misconduct. This was enough to disregard the general rule that "a juror's belief in his or her own impartiality is not inherently suspect and may be relied upon by a trial court." *State v. Philipps,* 74 Ohio St.3d 72, 89, 656 N.E.2d 643 (1995). The offending female juror lied to the trial court under oath, committing perjury, which certainly discredited her testimony that she had relied solely on the testimony adduced in the courtroom. A second juror, Juror #1, testified that he had "considered" the improper information. These facts established the required prejudice.

{¶ 21} Furthermore, the record disturbingly reflects additional prejudice, where juror V.F. testified as follows:

THE COURT:   Okay. Did you hear any other jurors discuss doing outside investigation, specifically looking at maps of that area:

THE WITNESS: Yes, ma'am.

THE COURT:   Okay. And what did you hear?

THE WITNESS:   I had someone come the second day and she said, "Oh," she was – she had looked at some maps. She also said that, "I know you weren't supposed to look stuff up," she says, "But I did, and that's **not the first time that young man's been in trouble**." And I said, "Is that right?" And she said, "Yeah," I'm trying to remember exactly what was said. And I forget what else, because I'm now – I'm getting really nervous.

THE COURT:   Oh, don't be ner—like you are not in any trouble --

THE WITNESS:   Right, I just don't --

THE COURT:   -- I just want you to be –

THE WITNESS:   -- want to say something that she didn't say. Because my thought was, "I got to get away from you, you're -- you weren't supposed to do that."

And – oh – then I – she said something about, **"I think they had to pick him up" – I was in the hallway or something, she goes, "I think he's already in jail for something because I heard somebody in the hallway say that's where they picked him up this morning".**

And then I just got away from her because I thought "I don't want to be involved in this. You weren't supposed to do that," and I just got away from her.

(Emphasis added.)

{¶ 22} This exchange established additional prejudice as the perjurious female juror suggested to juror V.F. that Fultz was a recidivist and in jail. Notably, the PSI reflected no prior record, and this was unquestionably outside information, misconduct, and false information. The perjurious female juror was incapable of rendering satisfactory service and lied regarding facts material to Fultz's defense. Under the Sixth and Fourteenth Amendments, a criminal defendant is entitled to "a fair trial by a panel of impartial, 'indifferent' jurors." *Morgan v. Illinois,* 504 U.S. 719, 726-27, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), quoting *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). "In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworne.' Co. Litt. 155b. His verdict must be based upon the evidence developed at the trial," *id.* at 727, without regard to any extraneous influences. *See Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it * * *."); *Sheppard v. Maxwell,* 384 U.S. 333, 351, 362, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) ("Due process requires that the accused receive a trial by an impartial jury free from outside influences"; the jury's verdict must be based on "evidence received in open court, not from outside sources.").

{¶ 23} The integrity of deliberations is the heart and soul of our system of justice.

Judicial control of the jurors' knowledge of the case is fundamental. Evidence "considered" must be subject to cross-examination and rebuttal. It was not, and prejudice accordingly has been established. An abuse of discretion is demonstrated, and Fultz's assigned error is sustained.

{¶ 24} The judgment of the trial court is reversed, and the matter is remanded for a new trial.

. . . . . . . . . . . .

WELBAUM, J., concurs.

EPLEY, J., dissents:

{¶ 25} For the following reasons, I respectfully dissent from my colleagues' opinion.

{¶ 26} Crim.R. 33(A)(2) declares that a new trial may be granted based on jury misconduct if it materially affected the defendant's substantial rights. The trial court's decision is reviewed for an abuse of discretion. *State v. Graf*, 2022-Ohio-2169, 191 N.E.3d 539, ¶ 14 (2d Dist.). The analysis has two steps: First, it must be determined whether there was juror misconduct. If juror misconduct is found, it must then be determined whether it materially affected the defendant's substantial rights. *Hopfer,* 112 Ohio App.3d at 543, 679 N.E.2d 321. If juror misconduct in the form of an independent investigation is uncovered, the trial court must inquire of each juror to determine if he or she remained impartial after the independent investigation. *Fowler,* 2d Dist. Clark No. 2015-CA-95, 2016-Ohio-5867, at ¶ 9.

{¶ 27} Both parties and the trial court agreed that there was juror misconduct in

this case.   "Any independent inquiry by a juror about the evidence or the law violates the juror's duty to limit his [or her] considerations to evidence, arguments, and law presented in open court, and such activity is juror misconduct."   *State v. Gunnell*, 2d Dist. Clark No. 2009-CA-13, 2010-Ohio-4415, ¶ 76.   The unidentified female juror's Google search of the neighborhood surrounding the crime scene met that standard. That is not the end of the inquiry, though.   "[N]ot every instance of juror misconduct requires a [new trial].   The misconduct must be prejudicial." *Id.*   This is where I part ways with the majority.

{¶ 28} Although Juror #1 considered the outside information, he unequivocally stated that it did not influence his decision to find Fultz guilty; he remained impartial. The record affirms that position with the following exchanges:

JUROR #1: Yeah, but I did take into consideration what she had said.

COURT: Okay

JUROR #1: But the evidence that was brought up in court made my final decision.

COURT: [W]ould you say that the information from this juror changed your verdict from not guilty to guilty?

JUROR #1: No. No.

DEFENSE COUNSEL: But that outside information that was discussed in the room, it's your testimony that it had some weight in your decision.

JUROR #1: It did. It did, it had some, but also my final decision was made off what was brought up * * * evidence brought up during the trial.

PROSECUTOR: So, to clarify, * * * if I understand your testimony correctly is this additional information from this juror did not affect your decision as to

changing what would have been a not guilty decision into a guilty decision.

JUROR #1: Correct. * * * Would not have changed it.

Trial Tr. at 263-265. Hence, even though Juror #1 had considered what the rogue juror said, his decision to find Fultz guilty was based *solely* on evidence from trial. In fact, all 12 jurors said the same.

{¶ 29} Nevertheless, the majority contends that the fact that Juror #1 even considered the information provided by the rogue juror was prejudicial. To be successful on his motion for new trial, though, Fultz was required to prove that his substantial rights had been violated and, in my opinion, he did not reach that threshold. He claims that "[t]here are no assurances that [he] had a fair trial due to this misconduct," but that statement alone does not demonstrate that he did not. There was no evidence offered by Fultz that the outcome of the trial would have been different absent the outside information.

{¶ 30} The only evidence before the trial court was the testimony of the 12 jurors, and every one of them expressed that the verdicts were based on the evidence presented at trial and nothing else. *See State v. Fisher*, 3d Dist. Auglaize No. 2-21-06, 2021-Ohio-3788, ¶ 37 (a juror's belief in his own impartiality may be relied upon by the trial court). Further, because the trial court was in the best position to resolve questions of fact and evaluate witness credibility, we must defer to its judgment in that regard. The trial court found the jurors statements that their verdicts had been based only on the evidence presented at trial to be credible, and I cannot conclude otherwise. I do not believe that the court's decision was unreasonable, arbitrary, or unconscionable, and because of that,

I would affirm the trial court's decision.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Karen B. Groseth
Hon. Susan D. Solle